282 N.J. Super. 323 (1995)
659 A.2d 1387
HORIZON HEALTH CENTER, PLAINTIFF-RESPONDENT,
v.
ANTHONY J. FELICISSIMO, HELPERS OF GOD'S PRECIOUS INFANTS, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued May 31, 1995.
Decided July 5, 1995.
*324 Before Judges PRESSLER, LANDAU and NEWMAN.
Richard J. Traynor argued the cause for appellant (Legal Center for Defense of Life, Inc., attorneys; Mr. Traynor, on the brief).
Cynthia V. Fitzgerald argued the cause for respondent (Chasen, Leyner, Tarrant & Lamparello, attorneys; Ms. Fitzgerald, on the brief).
The opinion of the court was delivered by LANDAU, J.A.D.
This appeal by defendants Anthony J. Felicissimo and Helpers of God's Precious Infants was taken from a September 21, 1994 order of the Chancery Division, Hudson County, that issued upon the New Jersey Supreme Court's remand for partial modification of a 1991 injunction which had imposed certain restrictions upon the manner and place of anti-abortion protests by defendants at a family-planning clinic operated by plaintiff Horizon Health Center in Jersey City.
We conclude that the modifications did not sufficiently comply with the Supreme Court's directions on remand. Exercising our original jurisdiction, R. 2:10-5, we affirm the order under review, subject to the further modifications set forth below.

I.
The underlying facts and history are extensively set forth in Horizon Health Center v. Felicissimo, 135 N.J. 126, 132-36, 638 A.2d 1260 (1994), affirming as modified 263 N.J. Super. 200, 204-11, 622 A.2d 891 (App.Div. 1993).
Finding that the injunction was content neutral, our Supreme Court noted that the trial court made specific findings that *325 defendants had blocked the access of potential patients to the facility and disrupted street traffic, and that the purpose of the injunction is to allow defendants to express their views in "a manner that does not interfere with or disrupt the Center, its patients, or its staff." Id. at 142-43, 638 A.2d 1260. In evaluating the reasonableness of the time, place, and manner restrictions of the injunction, the Court concluded that while an injunction was warranted, the manner restrictions required even more modification than had been provided by our opinion. Id. at 148-49, 638 A.2d 1260. Specifically, for so much of paragraph one of the injunction as prohibited defendants
from gathering, parading, patrolling and picketing the property of [the] Center in such a manner as to disrupt, intimidate or harass the staff, employees or patients or persons accompanying patients of [the] Center and specifically from using obscene or abusive language or insults or epithets directed at [the Center]'s medical and executive staff or at patients or persons accompanying patients desiring to use their professional services and at their employees, and refrain from making loud accusations and shouting statements which are abusive at the aforesaid staff; physicians and/or patients and persons accompanying patients;
it substituted the following:
from screaming, chanting, singing, speaking, yelling, or producing noise in any other manner, in a volume that interferes with the provision of medical services within the Center.
[Id. at 149-50, 638 A.2d 1260.]
The Court upheld the prohibition against defendants "from invading or trespassing upon the property of the [Center] ...", and "from intentionally interfering with the flow of traffic into and out of [the] Center's premises by blocking and/or obstructing ingress into or egress from same." Id. at 150, 638 A.2d 1260. Those restrictions, it was held, were "sufficiently narrowly tailored to serve the significant government interests of preservation of health and the safety of medical procedures, protection of private property, and public safety." Ibid.
What prompted the Supreme Court to further modify the injunction, however, was the absence from the record of a history of "threats, intimidation, and assault of clinic personnel and clients...." or other indicia of violence. Id. at 151, 638 A.2d 1260 (citation omitted). Thus, it determined, "that rather than prohibiting *326 all expressional activities on the sidewalk directly in front of the Center, the injunction should have allowed a limited, controlled form of expression near the entrance while restraining the troublesome mass of protestors to a location across the street." Id. at 152, 638 A.2d 1260.
Accordingly, the remand called for the trial court to fashion a fact-sensitive injunction "that permits some form of expression by defendants near the Center." Ibid.
More specifically, although we have no doubt that a "place" restriction imposing a general buffer zone (requiring the bulk of the demonstrators to remain across the street) is appropriate in this case, we cannot say precisely what limited form of expression in front of the center would be feasible. The injunction should give consideration to the right of the protestors to make their presence known and to the role of sidewalk counselling in that process, while at the same time protecting against any harassment of the patients or others who wish to enter the clinic. In crafting its restrictions the trial court may find guidance in the decisions of other jurisdictions that have imposed on clinic protestors injunctions less restrictive than those that the trial court initially imposed here. See supra at 151-53, 638 A.2d at 1272-73.
[Id. at 153, 638 A.2d 1260.]
The injunctions issued in the out-of-state decisions referred to by the Court included provision for a 500 foot buffer zone within which two people could sit at a table alongside the clinic to distribute literature and offer counselling, allowing six peaceful picketers within the zone[1]; a prohibition against trespassing on, blocking, and obstructing access to a clinic, and prohibiting abusing persons physically, but allowing quiet sidewalk counselling of a non-threatening nature[2]; a requirement for dual speech-free zones of fifteen feet around entrances, people, and vehicles, but allowing two sidewalk counsellors who must stop counselling when the targeted person indicates a desire to be left alone[3]; and the *327 exclusion of peaceful picketers from a twenty-five foot "bubble zone" around a clinic.[4]
The Court made clear that it envisioned an injunction which provided "reasonable opportunity" to confront or intercept willing and unwilling listeners by permitting "some form of expression near the clinic's entrance" in which defendants will be able "to address staff, patients, and visitors in a civil manner in front of the Center and they may continue to pray, to carry placards, and to express themselves in other ways across the street...." Id. at 153, 638 A.2d 1260.

II.
The present injunctive order, as revised upon remand, provides that:
1. Anthony J. Felicissimo and the Helpers of God's Precious Infants and/or persons and organizations affiliated, acting in concert or participation with, or on behalf of Anthony J. Felicissimo and/or the Helpers of God's Precious Infants shall desist and refrain from: (a) entering or trespassing upon the property of the plaintiff, Horizon Health Center, Jersey City, New Jersey; and (b) from screaming, chanting, singing, speaking, yelling, or producing noise in any other manner, in a volume that interferes with the provision of medical services within the Center; and
2. That said persons or organizations shall desist and refrain from blocking, impeding, inhibiting, or in any other manner obstructing or interfering with access to, ingress into and egress from the Center's premises located at 706-714 Bergen Avenue; and
3. That said persons or organizations shall not enter any portion of the sidewalk on the eastern side of Bergen Avenue contiguous to the Center's premises beginning at a point 36 feet south from the entrance door of the Center at 706 Bergen Avenue and extending to a point 36 feet north from the entrance door of the Center at 714 Bergen Avenue [hereinafter "the buffer zone"]; and
4. That "sidewalk counselling" shall be limited to no more than two (2) persons on the sidewalk north of the buffer zone and/or no more than two (2) persons on the sidewalk south of the buffer zone; and
5. That the activity of the demonstrators shall be limited to the sidewalk on the western side of Bergen Avenue opposite the Center.
*328 We note that no new facts were adduced upon the remand.
On this appeal, defendants have continued to press their First Amendment arguments directed broadly against all injunctions of this general nature. These we deem to have been resolved by our Supreme Court in Horizon Health Center, supra. The United States Supreme Court has since decided Madsen v. Women's Health Center, Inc., ___ U.S. ___, 114 S.Ct. 2516, 129 L.Ed.2d 593 (1994), and Lawson v. Murray, ___ U.S. ___, 115 S.Ct. 44, 130 L.Ed.2d 6 (1994)[5]. The latter opinion remanded for modification a New Jersey injunction, previously upheld in Murray v. Lawson, 136 N.J. 32, 642 A.2d 338 (1994), that prohibited any form of picketing within 300 feet of the home of a physician who performed clinic abortions. In Madsen, supra, the United States Supreme Court imposed a somewhat heightened standard for content-neutral injunctions, but upheld under that standard a thirty-six foot buffer zone around a health center, as well as certain noise restrictions. ___ U.S. at ___, 114 S.Ct. at 2527-28, 129 L.Ed.2d at 610-12.
On the remand in Murray, the New Jersey Supreme Court carefully analyzed Madsen, and concluded that while the injunction was content neutral and served a significant governmental interest, the 300-foot speech-free zone required modification. Murray v. Lawson, 138 N.J. 206, 234, 649 A.2d 1253 (1994) (Murray II), cert. denied, ___ U.S. ___, 115 S.Ct. 2264, 132 L.Ed.2d 269 (1995). Nonetheless, it was concluded in that residential privacy case, even without the presence of a prior history of conduct-based factors (e.g., unlawful or disorderly conduct), that a 100-foot buffer was appropriate, together with restrictions on *329 the number of picketers and the frequency and duration of picketing. Ibid. On May 30, 1995, the petition for certiorari in Murray II was denied.
Upon consideration of the recent holdings in Madsen, supra, and Murray, supra, as well as the denial of certiorari in Murray II, supra, we are satisfied that an injunctive order which complies with the mandate of the Supreme Court in the present case will continue to pass constitutional muster[6], particularly as it was originally issued based upon findings as to defendants' prior conduct[7].

III.
We focus the balance of our review upon defendants' contention that the trial judge failed to satisfy the mandate of the Supreme Court upon remand to craft a modification which permitted a reasonable but limited form of direct communication on the sidewalk in front of the center and near its entrance[s], in the zone otherwise insulated from defendants.
In this regard, we note first and reject as clearly without merit defendants' contention that the trial judge improperly relied upon personal knowledge of the clinic site and hearsay in fashioning the modifications. The judge attempted to employ the familiarity "with the locale and with the contesting participants" specifically recognized by the Supreme Court in Horizon Health Center, supra, 135 N.J. at 152, 638 A.2d 1260. However, as noted earlier, no new evidence was taken or utilized.
*330 A rough schematic drawing, complained of by defendants on appeal, was utilized only as a visual aid to provide to the parties an understanding of the operation of the buffer zone. Its authentication was entirely unnecessary in the circumstances. However, in order that there be no confusion, and to avoid the expenditure of the further time and resources incident to a further remand, we secured and received approval from the parties to visit the site in order that we might better evaluate whether the recrafted buffer zone and sidewalk counselling provisions, contained in paragraphs three and four of the revised injunctive order, comply with the directions of the Supreme Court.
On remand, the revised injunction was to permit reasonable opportunity for defendants' counsellors to address staff, patients and visitors in a civil manner, without harassment, utilizing guidance from cases such as those cited at pp. 326-27, 659 A.2d at pp. 1388-89, supra, nn. 1-4. Since the remand in this matter, Madsen, supra, was decided, and the trial judge understandably looked to that opinion for guidance as well.
As the prior opinions in this case have recognized, Horizon Health Center, supra, 135 N.J. at 132, 638 A.2d 1260, 263 N.J. Super. at 204, 622 A.2d 891, the center is located in three connected buildings on Bergen Avenue, a busy urban thoroughfare. There are four doors. The revised injunction prohibits defendants and persons acting on their behalf from entering any portion of the sidewalk in front of these three buildings "beginning at a point thirty-six feet south from the entrance door of the Center at 706 Bergen Avenue[8] and extending to a point thirty-six feet north from the entrance door of the Center at 714 Bergen Avenue.[9]" That area is designated the "buffer zone" and sidewalk counselling, though permitted, can be conducted only north or south of the zone, and by a maximum of two persons on each side of the zone.
*331 At oral argument defendants' counsel stated that the practical effect of this buffer zone, although superficially appearing to adopt the Madsen thirty-six-foot buffer-zone restriction, was to consign the two sidewalk counsellors permitted at the southerly side of the zone to the front of a neighboring retail facility, while primarily restricting the two north-side counsellors to a relatively narrow street corner and a side of the building that has no entrance. Our site visit confirms generally that representation[10].
We recognize the Supreme Court's expressed desire to rely upon the trial judge's familiarity with the facts and competing interests of the parties. Nonetheless, it is evident to us that despite the conscientious efforts of the judge, paragraphs three and four of the revised injunction continue effectively to prohibit expressional activities on the sidewalk directly in front of the three-building-wide Center or near its entrance doors.
Although the Supreme Court could not "say precisely what limited form of expression in front of the Center would be feasible", it required recognition of "the right of the protestors to make their presence known" and "the role of sidewalk counselling in that process, while at the same time protecting against any harassment," and cited several out-of-state injunction cases for guidance. Horizon Health Center, supra, 135 N.J. at 153, 638 A.2d 1260. Paragraphs three and four do not fulfill these standards.
"When an injunction impermissibly exceeds applicable legal standards, appellate courts can modify or rewrite such an injunction to conform to those standards." Horizon Health Center, supra, 135 N.J. at 148, 638 A.2d 1260. Reluctantly, we conclude that a full remand will unnecessarily delay final resolution of this matter which has been pending since 1991. Accordingly, we *332 modify paragraphs three and four of the revised injunction to read as follows:
3. That, except as set forth in paragraph 4, said persons or organizations shall not enter any portion of the sidewalk on the eastern side of Bergen Avenue contiguous to the Center's premises beginning at a point 36 feet south from the entrance door of the Center at 706 Bergen Avenue and extending to a point 36 feet north from the entrance door of the Center at 714 Bergen Avenue [hereinafter "the buffer zone"]; and
4. That quiet sidewalk counselling of a non-threatening nature shall be permitted by a total of not more than four sidewalk counsellors who must stop counselling when a targeted individual indicates a desire to be left alone; two of said counsellors shall be limited to the sidewalk north and south of the buffer zone, and two sidewalk counsellors shall be permitted on the sidewalk within the buffer zone, provided that no entrance is obstructed; and

CONCLUSION
Subject to the modifications set forth above, the order of September 21, 1994, is affirmed. We remand solely for entry of a modified injunctive order consistent with this opinion.
NOTES
[1] Northeast Women's Ctr., Inc. v. McMonagle, 939 F.2d 57, 65 (3d Cir.1991).
[2] New York State Nat'l Org. for Women v. Terry, 886 F.2d 1339, 1362-64 (2d Cir.1989), cert. denied, 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990).
[3] Pro-Choice Network v. Project Rescue, 799 F. Supp. 1417, 1433-37 (W.D.N.Y. 1992), motion to vacate denied, 828 F. Supp. 1018 (W.D.N.Y. 1993).
[4] Planned Parenthood Ass'n v. Holy Angels Catholic Church, 765 F. Supp. 617, 619-20 (N.D.Cal. 1991).
[5] We note that a petition for certiorari has recently been denied in a case which upheld the constitutionality of the Freedom of Access to Clinic Entrances Act of 1994, 18 U.S.C. § 248. See Woodall v. Reno, 47 F.3d 656 (4th Cir.1995), cert. denied, ___ U.S. ___, 115 S.Ct. 2577, 132 L.Ed.2d 827 (1995). See also American Life League, Inc. v. Reno, 47 F.3d 642 (4th Cir.1995), cert. filed, ___ U.S. ___, ___ S.Ct. ___, ___ L.Ed.2d ___, 63 U.S.L.W. 3834 (May 12, 1995).
[6] We note that Pro-Choice Network v. Schenck, 34 F.3d 130 (2d Cir.1994), relied on by defendants, and pending rehearing en banc, has been withdrawn from publication, see Editor's Note, 34 F.3d 130, 131-47 (2nd Cir.1994), and remains so as of the date of this opinion.
[7] Those findings included blocking ingress to the clinic, and harassment of patients by sidewalk counsellors. Horizon Health Center, supra, 135 N.J. at 135, 638 A.2d 1260.
[8] The southernmost door.
[9] The northernmost door.
[10] Horizon's counsel has objected to certain markings which were placed on the sidewalk in front of the Center, presumably purporting to designate a thirty-six-foot limit of the buffer zone at each end of the building complex. Our observations were entirely uninfluenced by those markings.