287 N.J. Super. 209 (1996)
670 A.2d 1081
OPTIONS, PLAINTIFF-RESPONDENT,
v.
MICHAEL LAWSON, DAVID CRIST, EDITH TUCKER & JANE DOE & JOHN DOE (FICTITIOUS NAMES FOR ALL PERSONS AND ORGANIZATIONS ASSOCIATED OR ACTING IN CONCERT OR IN COMBINATION WITH THEM), DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Submitted September 20, 1995.
Decided February 2, 1996.
*211 Before Judges KING, LANDAU and HUMPHREYS.
Richard J. Traynor, attorney for appellants.
*212 Pamela Mandel, attorney for respondent.
The opinion of the court was delivered by LANDAU, J.A.D.
The above-captioned defendants, who are various persons and organizations opposed to abortion, appeal from a permanent injunctive order entered against them and in favor of the plaintiff "Options." The order enjoins and restrains defendants and all persons or organizations acting in combination with them from:
(a) Entering upon plaintiff's property and/or premises, which for the purpose of the Order and as directed to the rear of the property means the edge of the dirt road;
(b) Obstructing or stopping vehicular access to Candlewood Commons;
(c) From picketing and/or demonstrating on the Salem Hill Road side other than on the sidewalk  but not beyond the point at which the curbing forming the driveway on either side thereof, begins to curve inwards and away from Salem Hill Road;
(d) Using any artificial means of amplifying the natural human voice in making known their message or views;
(e) Shouting from the private dirt road behind Candlewood Commons at patients and staff inside plaintiff's premises expressions such as "You will burn in hell" or "God will kill you" or the like.
The suit was instituted by plaintiff through an order to show cause and a verified complaint which asserted that "Options[] is a medical office established for the practice of general gynecology and contraception technology" where "[t]ermination of pregnancy is offered as a surgical alternative for failed contraception."
Plaintiff's offices are located in Howell at the rear of a condominium professional office development known as Candlewood Commons. All but four of the eighteen offices in the development are occupied by health professionals in various disciplines.
According to affidavits submitted in support of the order to show cause and temporary restraints, the "office" performs first-trimester surgical terminations of pregnancies in its operating room located on the premises. Physicians, anesthetists and other health professionals engaged at "Options" submitted affidavits indicating that picketing defendants harassed or interfered in *213 various ways with persons seeking to use a common driveway running from Salem Hill Road, which serves Candlewood. The affidavits also indicated that a small group of picketers utilized a public dirt road which abuts the rear of Candlewood Commons to shout messages such as "Don't kill your baby" and "You're going to burn in hell" so loudly as to unnerve and upset plaintiff's surgical patients and compromise the communication among health professionals required during the course of demanding surgical procedures. Additionally, unrelated health professionals and other occupants of professional offices at Candlewood certified to adverse effects upon their patients and professional interests by reason of the loud volume and contents of the shouted messages, as well as from intimidation when they or their patients entered the Candlewood driveway by automobile from Salem Hill Road.
The extent and nature of the picketing and message shouting activities were disputed in various details by answering certifications. Temporary and interlocutory injunctions were issued in September and October 1993, but after hearing limited testimony in open court, the trial judge declined to enter an order of contempt as requested by plaintiff.
A plenary hearing to determine whether the restraints should be made permanent was scheduled for May 16, 1994. The trial judge was then in the midst of another trial. He inquired, "if we go through a full blown trial in a plenary hearing, whether I would hear anything substantially more than I have already heard in the case. Anything that changes factually?" Defendants' counsel replied that extensive depositions (not part of this record) had been taken, purportedly containing factual differences from the information contained in earlier affidavits and court testimony. He requested a plenary hearing in order to challenge plaintiff's witnesses.
The judge indicated that absent "dramatic change" he probably would not be inclined to change much of the interlocutory injunction, which he deemed to be consistent with the Supreme Court's then recent pronouncement in Horizon Health Center v. Felicissimo, *214 135 N.J. 126, 638 A.2d 1260 (1994). Defendants' attorney persisted in urging that the facts in the instant matter were materially different from those in Horizon Health Center, in which well over a hundred demonstrators were found to have been involved in blocking access to the clinic, blocking automobile traffic in a major artery, harassing patients and others, and making noise of a magnitude that interfered with the clients' medical services. Id. at 132-34, 638 A.2d 1260.
The court asked, "What do you expect me to hear from witnesses?" Counsel replied, "What I expect you to hear and [sic] there was no impeding of ingress and egress, any car that was stopped, stopped of their own volition. In the case of Dr. Murray, he never stopped at all. He was never forced to stop. Nobody was standing in front of the car."
Thus, counsel requested a hearing on the facts which underlay the question of whether restrictions addressed to impedance of automobile traffic and trespassing by picketers were necessary. Counsel also asked that there be no control on the content of what demonstrators could say, arguing that this was unconstitutional. He urged that a hearing was necessary to explore the level of sound generated by the demonstrators' voices before making a final adjudication that the noise level was sufficiently high to constitute a nuisance.
Several significant colloquies followed. One was between defendants' attorney and the court:
MR. TRAYNOR: Are you saying to me, your Honor, that as defense attorney, if I offer witnesses, if I cross-examine their witnesses and offer witnesses of my own which establishes that there is no prohibition, there is no impediment of ingress and egress 
THE COURT: I would keep it in my order any way.
MR. TRAYNOR: You would keep it in your order?
THE COURT: Yes, if that makes it clear for you, absolutely, yes.
MR. TRAYNOR: It does make it clear. That's what I intend to prove.
THE COURT: I wouldn't change that one wit because I don't think that  I don't believe that they are doing it but I think it's a very positive thing that it's in my order because if someone new came along, they might think of doing it unless *215 someone said oh, gee Judge McGann thought about that and ahead of time, he told you don't do that.
Another colloquy was between plaintiff's attorney and the court:
MS. MANDEL: Thank you, your Honor. I would like to address two issues. First of all, the shouting from the dirt road. I do believe that in view of the recent cases, both the Murray and Boffard decision. Horizon, there may be a problem with attributing the specific prohibition to being content neutral.
I believe we can withstand the standard in examining whether it's permissible to prohibit content neutral speech but I would ask the court to avoid that problem by merely stating that they may not shout in such a manner as to be heard inside.
THE COURT: I was asked to do that before and I said no and I won't change that.
Defendants' counsel made the following offer of proof which would have been presented had a plenary hearing been held:
MR. TRAYNOR: That the defendants picketed on public property peacefully at the front entrance of Candlewood Commons, Howell, one.
Two, that [they] did not obstruct ingress to or egress from plaintiffs separate premises or any of premises by anyone at or in Candlewood Commons by picketing and offering counseling at the entrance of Candlewood Commons.
Three, that the defendants made and sought communication with tenants of Candlewood and patrons and employees of the plaintiff Options by offers of help and counseling, by displaying signs, by speaking and by preaching the word of God and by distribution of literature to pregnant women seeking abortions.
Four, that the defendants never interfered with any medical procedure of plaintiff or any other activity of plaintiff.
Five, that the defendants never trespassed on plaintiff's premises.
Six, that the defendants conveyed messages to staff and patrons of the plaintiff's clinic accurately from scripture.
Those would be the  that would be the content of the testimony under oath that defendant would offer which would contradict the proofs of the plaintiff. The defendant seeks that opportunity.
Essentially, the judge determined to rely on the records made in prior proceedings, concluding that, save for some limited additional testimony and videotape evidence in clarification of the configuration of the Candlewood driveway, the record was sufficient for appellate review. "If I make a permanent injunction, you can go right up without a whole bunch of testimony. The testimony doesn't change what I've said based on prior testimony." The judge also explained further the order in subparagraph (e) which prohibits "Shouting from the private dirt road behind Candlewood *216 Commons at patients and staff inside plaintiff's premises expressions such as `You will burn in hell' or `God will kill you' or the like." He said:
With regard to the quoting from scripture, I have already indicated, and it's contained in Paragraph (e) of the order which I've entered, certain statements which I don't believe ought to be made just because they appear in scripture.
I said that they should not be made in the context of privacy, right of the individual who's going through a very difficult time in going to this abortion clinic, if that's the correct term.
And that the individual should not have imposed additional guilt which some people truly believe is there. But in making that decision, I just think it's improper to use terms like that which are pejorative and which many people would think are not a correct expression of the will of the Almighty; but I understand what you're saying but I'm not changing Paragraph (e).
As to the restraints against trespassing and obstructing access, the judge said:
As far as the others are concerned that they didn't trespass, I never made a finding that they did trespass but the order is there to make sure they do not trespass because without the order and in the heat of the moment, things can occur and I don't want those things to occur because it will escalate the problem beyond that which the First Amendment protects vitally. And you can argue your belief to the Appellate Court.
And so it is with regard to their denial that they have ever blocked entrance by their importuning people or by their picketing, they have ever denied entrance, exit to the complex, my order makes sure that doesn't happen.
If I believe them, I want to make sure that it doesn't happen in the future. That's why it's a permanent injunction. So having said all of that and I having said all of that, this order becomes the permanent injunction.
It is urged on appeal that defendants' due process rights were denied because the trial judge entered a permanent injunction, but declined to conduct a full plenary hearing with opportunity for them to present evidence and to confront and cross-examine witnesses, while relying largely upon the affidavits submitted by plaintiff in support of the order for preliminary restraints. Citing traditional equitable authorities such as Crowe v. De Gioia, 90 N.J. 126, 132, 134, 447 A.2d 173 (1982), and Citizens Coach Co. v. Camden Horse R.R., 29 N.J. Eq. 299, 303 (E. & A. 1878), defendants contend that because there were material factual disputes on the affidavits and certifications submitted, even the application for preliminary and interim restraints should have been denied *217 pending plenary trial and, a fortiori, restraints should not have been made permanent absent a plenary proceeding.
Defendants argue further that there was no proof of trespassing nor of any other unlawful behavior and that the "sole basis for plaintiff's complaint was that defendants' peaceful, expressive activities on public property annoyed it."
Our review of the transcripts and certifications submitted satisfies us that in light of the health and safety interests involved, there was sufficient reason to issue and continue, pending plenary hearing, temporary and interlocutory injunctions to prevent obstruction or stopping of vehicles entering the Candlewood driveway from Salem Hill Road, to limit picketing on the sidewalk to the point where the driveway curbing curves inward and away from the road, and to impose reasonable volume restraints on shouted messages. We agree, however, with defendants' argument that in light of the extreme gravity of imposing injunctions against expressive conduct, defendants should have been given the opportunity to dispute plaintiff's factual allegations and to confront plaintiff's witnesses, and that the court should have made specific findings thereon, before entry of permanent injunction.
Because of the governmental interest in preservation of health, courts may impose injunctive restrictions to protect health and patient safety in appropriate circumstances, balancing such restrictions even against some citizens' constitutional rights. Horizon Health Center, supra, 135 N.J. at 143-45, 638 A.2d 1260. There must, however, be evidentially based findings that health and safety have been threatened.
As we understand decretal subparagraph (d) of the order, concerning artificial voice amplification, it was directed at the adverse impact of distracting noise upon doctors and their assistants during the course of surgery, with consequent risks to patients. Defendants wished to contest and explore by cross-examination during a plenary proceeding the facts underlying a finding that this occurred, but were effectively refused that right. *218 The order in decretal paragraph (e) appears to have been based upon the court's sense that words such as "You will burn in hell" might well produce medically harmful emotional reactions in some patients, and further, that the words constituted an invasion of patient privacy. Neither issue was explored by plenary hearing.
While our Supreme Court has recognized health and accessibility of medical services as rights protectable through injunctive restrictions, it has declined to approve an injunction on the basis of protecting the privacy right in abortion. See Horizon Health Center, supra, 135 N.J. at 144, 638 A.2d 1260 (disapproving rationale in Planned Parenthood v. Cannizzaro, 204 N.J. Super. 531, 499 A.2d 535 (Ch.Div. 1985), aff'd, 217 N.J. Super. 623, 526 A.2d 741 (App.Div. 1987)).
The absence of an adequate evidential hearing and detailed findings of fact to support the permanent injunction alone requires that we reverse and remand the permanent order pending a full plenary hearing. In light of the several colloquies quoted above, however, we are constrained to comment further on the law applicable to such injunctions.
First, as the United States Supreme Court has cautioned, "[u]nder general equity principles, an injunction issues only if there is a showing that the defendant has violated, or imminently will violate, some provision of statutory or common law, and that there is a `cognizable danger of recurrent violation.'" Madsen v. Women's Health Center, ___ U.S. ___, ___ n. 3, 114 S.Ct. 2516, 2525 n. 3, 129 L.Ed.2d 593, 607 n. 3 (1994) (quoting United States v. W.T. Grant Co., 345 U.S. 629, 633, 73 S.Ct. 894, 898, 97 L.Ed. 1303, 1309 (1953)). Here, the trial judge indicated that irrespective of whether the picketings could be shown by defendants to have been conducted benignly in this non-residential setting, without intimidation or trespass, a permanent injunction would issue against conduct which might in the future occur. On remand, we trust that the quoted cautionary footnote from Madsen will be given weight. Compare Murray v. Lawson, 138 N.J. 206, 234, 649 A.2d 1253 (1994), cert. denied, ___ U.S. ___, 115 S.Ct. *219 2264, 132 L.Ed.2d 269 (1995), in which a residential picketing injunction, as modified, was sustained absent previous disorderly or unlawful conduct. See also Horizon Health Center, supra, 135 N.J. at 152, 638 A.2d 1260, in which the court recognized that the factual history of protectors' conduct must be considered when crafting an injunctive order. We do not rule out consideration of prior conduct of these defendants at other abortion protest sites, but if such conduct is considered, it should be on findings and a record supporting the findings.
Next, while modified injunctions respecting the manner and place of anti-abortion picketing have been upheld in cases[1] like Madsen, Murray, and Horizon Health Center, these were all decided only after an initial determination that the injunctions were content-neutral, i.e., "without reference to the content of the regulated speech." See Clark v. Community for Creative Non-Violence, 468 U.S. 288, 293, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221, 227 (1984).
Heightened scrutiny by a reviewing court is necessary when an injunction is not content-neutral. Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45 103 S.Ct. 948, 955, 74 L.Ed.2d 794, 804 (1983); Madsen, supra, ___ U.S. at ___, 114 S.Ct. at 2518, 129 L.Ed.2d at 605; Horizon Health Center, supra, 135 N.J. at 140, 638 A.2d 1260. Plaintiff's attorney herself wisely suggested during a hearing below that subparagraph (e) of the injunction be modified to delete the prohibition against shouting expressions such as "You will burn in hell" or "God will kill you," in favor of a reasonable noise-level prohibition, which would avoid a content-based injunction issue.
It appears to us that the risk of emotional distress and consequent adverse medical consequences of the prohibited shouted *220 phrases ordinarily could be more narrowly addressed by a simple volume restriction. Should evidence adduced upon remand be deemed sufficient to venture again into restrictions upon content of the messages, we caution that such restrictions "must pass muster under the strictest scrutiny." Horizon Health Center, supra, 135 N.J. at 140, 638 A.2d 1260. Moreover, as noted above, privacy of the patient has not been deemed a valid basis for such an injunction. Id. at 144, 638 A.2d 1260.
Pending the remand here ordered, we direct that the permanent injunction be deemed interlocutory, but that operation of subparagraph (e) be suspended.

Standing of the Plaintiff
On appeal, defendants have reasserted their pleaded defense that plaintiff "Options" lacks standing to sue, "as it does not legally exist," and that in consequence the complaint and order to show cause should not have been entertained.
We requested further briefs from the parties on the ability of the court to enter a judgment for or against Options, as plaintiff's complaint asserted only that "Options[] is a medical office established for the practice of general gynecology and contraception technology" where "[t]ermination of pregnancy is offered as a surgical alternative for failed contraception." Our concern was not really with the question of standing. The person operating an office like that described in the complaint clearly has standing to assert its own interests and the related interests of its patients. See, e.g., In re Quinlan, 70 N.J. 10, 34-35, 355 A.2d 647 (1976), cert. denied, 429 U.S. 922, 97 S.Ct. 319, 50 L.Ed.2d 289 (1976); Planned Parenthood, supra, 204 N.J. Super. at 535-36, 499 A.2d 535. However, the absence of an identified juridical entity, i.e., a legal person, was evident.
Following our inquiry, plaintiff moved to supplement the record with documentation showing that "Options" is a duly registered corporate alternate name for Gyne Surgical Associates of Candlewood, *221 P.A. Plaintiff also moved to amend the pleadings to reflect Options' corporate status.
The existence of a proper legal entity is not, as originally argued by plaintiff, a mere matter of form rather than substance. In any suit, particularly one in which equitable relief is requested, the plaintiff must subject itself to orders enforceable against itself, as well as availing itself of favorable orders. Without the presence of a plaintiff capable of both suing and being sued, relief cannot be afforded. A complaint by a non-legal entity should not be entertained.
In this case, however, the documents submitted show that Gyne Surgical Associates of Candlewood, P.A. was incorporated shortly before institution of the within action, and its alternate name of "Options" was registered several days later. In consequence, we grant the motion to supplement the record, and the motion to amend the pleadings nunc pro tunc to include as plaintiff Gyne Surgical Associates of Candlewood, P.A., nunc pro tunc the date of filing of the complaint.
In the course of reviewing all of the pleadings and moving papers, we sought to ascertain whether Options had a juridical existence. We noticed repeated reference to Options being a "medical office," although there were also references to its "operating room" and to first-trimester terminations of pregnancy at that facility. Upon the remand, and as part of the consideration of plaintiff's entitlement to equitable relief, the Chancery judge may wish to explore whether Options requires a license as an abortion facility under N.J.S.A. 26:2H-1 to -26; N.J.A.C. 8:43A-21 to -23; and N.J.A.C. 13:35-4.2(f)3-4.

Conclusion
We reverse and remand the final injunctive order, pending further proceedings consistent with this opinion. We direct, however, that the injunctive order, as amended to suspend operation *222 of subparagraph (e), be continued on an interlocutory basis pending completion of the proceedings on remand.
We do not retain jurisdiction.
NOTES
[1] We note that in 1994, Congress enacted the Freedom of Access to Clinic Entrances Act, 18 U.S.C.A. § 248, giving authority to the Attorneys General of the United States and of all the states to seek injunctive relief against injury from conduct violative of the act.