722 A.2d 611

HORIZON HEALTH CENTER, PLAINTIFF–APPELLANT, v. ANTHONY J. FELICISSIMO, HELPERS OF GOD'S PRECIOUS INFANTS, JOHN DOE PICKETERS AND JANE DOE PICKETERS, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted November 12, 1998—Decided February 2, 1999.

Before Judges STERN, LANDAU and BRAITHWAITE.

*Skadden, Arps, Slate, Meagher & Flom*, attorneys for appellant (*Cynthia V. Fitzgerald*, on the brief).

*Richard J. Traynor*, attorney for respondents Anthony J. Felicissimo and Helpers of God's Precious Infants.

The opinion of the Court was delivered by

LANDAU, J.A.D.

Plaintiff Horizon Health Center (Horizon) is a non-profit urban clinic located in Jersey City. It provides a wide range of medical and social services, which include performance of first trimester abortions on Saturdays. Defendant Helpers of God's Precious Infants (Helpers) is an incorporated entity with a loosely defined "membership" which has focused upon organizing and participating with others in anti-abortion expressive activities at and near the Horizon clinic.

These activities have given rise to a long history of litigation, culminating in an injunctive order described more fully below.

The present phase of this litigation followed instances of violent conduct at the Horizon clinic over a period of several weeks, necessitating police responses and arrests. Horizon applied to the Chancery Division, Hudson County, for modification of the existing injunctive order entered in 1995 in accordance with our opinion in *Horizon Health Center v. Felicissimo,* 282 *N.J.Super.* 323, 659 *A.*2d 1387 (App.Div.), *certif. denied,* 142 *N.J.* 574, 667 *A.*2d 191 (1995) (*Horizon II*).[1] After hearings on the return of an Order To Show Cause, the judge denied modification, and Horizon appealed. We reverse and remand.

In *Horizon II, supra,* at 325, 659 *A.*2d 1387, we recognized the significance of prior judicial findings of harassment and blocking of patients' ingress to the formulation of an injunction which sought to balance the expressive rights of anti-abortion protesters with the "significant government interests of preservation of health and safety of medical procedures, protection of private property, and public safety," as required by the Supreme Court in *Horizon Health Center v. Felicissimo,* 135 *N.J.* 126, 150, 638 *A.*2d 1260 (1994), *aff'g as modified,* 263 *N.J.Super.* 200, 622 *A.*2d 891 (App.Div.1993).

The prior factual and legal background of this litigation which commenced in 1991 is contained in the three *Horizon Health Center* opinions cited above, and need not here be repeated in detail, except to note that in *Horizon II,* we ordered the injunction modified to permit limited counselling within a buffer zone, subject to restrictions upon the number of counsellors and upon the manner of counselling. *See Horizon Health Ctr., supra,* 282 *N.J.Super.* at 327, 332, 659 *A.*2d 1387.

### The Present Appeal

The appeal by Horizon challenges the Chancery Division's refusal to modify the existing injunctive order by restoring its pre-

---

[1] Defendant Felicissimo does not appear to have been involved in the present phase of the case.

*Horizon II* prohibition against the named defendants "and/or persons and organizations affiliated, acting in concert or participation with, or on behalf" of the named defendants from entering the buffer zone established by the order, despite proof of multiple recent violations of that order by persons who are not named defendants or members of Helpers.

Following an extensive factual hearing, the motion judge held that, although there was proof that the injunction was violated on several occasions, it was necessary for Horizon to prove that the individual violators were either members of the defendant Helpers, or were directed or assisted by its members in those violations, in order for the court to afford any relief. The judge said:

> It would be violative of any concept of due process that this Court is familiar with to hold defendants responsible for the acts of third parties, which acts are not induced, encouraged, directed, or in any manner caused by those defendants, in spite of the fact that both groups might have the same objective.

Helpers and the motion judge, we think, have misperceived the nature and purpose of the modification request and of the existing injunction. The injunction was intended to protect Horizon and the public from violations of its terms, not only by the named defendants, but by others who act in concert or participation [2] with them and who are aware of its provisions.

Injunctions of this nature are generally broad enough to encompass non-parties, who are bound provided they have actual notice of its substance and contents. The reason is to avoid nullification of a decree by unnamed aiders and abettors who carry out the prohibited acts. *Regal Knitwear Co. v. NLRB,* 324 *U.S.* 9, 14, 65 *S.Ct.* 478, 481, 89 *L.Ed.* 661, 666 (1945); *Planned Parenthood Ass'n of Cincinnati, Inc. v. Project Jericho,* 52 *Ohio St.*3d 56, 556 *N.E.*2d 157, 163 (Ohio 1990). However, to be bound, such persons, in pursuit of their common objective, must have acted in concert *or participation with* the party against whom an injunc-

---

2 "Participate ... to take part in something (as an enterprise or activity) usually in common with others." *Webster's Third New International Dictionary* (unabridged)(1971).

tion has been issued, and must have actual notice of the injunction. *R.* 4:52–4; *Northeast Women's Ctr., Inc. v. McMonagle,* 868 *F.*2d 1342 (3d Cir.), *cert. denied,* 493 *U.S.* 901, 110 *S.Ct.* 261, 107 *L.Ed.*2d 210 (1989).

Helpers' president and other witnesses called by defendants said that they undertook to inform participants in the prayer and protest activities at Horizon of the injunction's limitations upon location of demonstrators and counsellors, and with its other provisions. Horizon employees also informed demonstrators of its terms. There was general recognition that application of the injunction to the variously affiliated anti-abortion activists at the Horizon site did not depend on membership in Helpers[3]. In consequence, the injunction would be violated each time any participants in the anti-abortion activities at Horizon, with knowledge of its terms, undertook physically to block ingress to or forcibly to trespass upon the Horizon premises.

The proceedings below were not for contempt of the injunctive order or for violation of the *Freedom of Access to Clinic Entrances Act,* 18 *U.S.C.A.* § 248. Establishing violations of the order did not require proof that Helpers or its members actively fomented or themselves engaged in conduct violative of that order. The injunction is not so narrow. To require such proof on an application to broaden its reach would emasculate the injunction and the court's inherent power, and even imply that contempt proceedings could not be brought against non-members of Helpers who participate with them in the anti-abortion activities at Horizon.

■ Where persons subject to an injunction engage in serious violation of its protective provisions, all persons subject to the

---

[3] For example, Joseph Vigliotti, an evangelical activist who distributed leaflets and demonstrated at the Horizon site, testified that, as he was not involved in the events leading to the initial injunction, he violated its terms in 1994 by approaching patients within the buffer zone, to "test the waters." He was arrested and fined; but now complies, and is frequently one of the two buffer zone counsellors.

injunction can be bound by modifications deemed necessary to respond to the violative conduct. Were this not so, most, if not all, such injunctions could be rendered ineffective simply by substituting new faces or organizations at each protected site. *See United States v. Hall,* 472 *F*.2d 261, 266 (5th Cir.1972); *Planned Parenthood Ass'n of Cincinnati, Inc. v. Project Jericho,* 52 *Ohio St.*3d 56, 556 *N.E.*2d 157, 163 (Ohio 1990).

Essentially, two questions were properly before the court: (1) Was the injunction violated? (2) If violated, did the public interest in safety of persons and property require enhanced protection by restricting further the limited expressive activity permitted by the injunction for counsellors within the buffer zone? Because the application by Horizon was not directed at punishment of Helpers, but at the protection of Horizon and its patients, those questions, and not whether Helpers and its members were responsible for the violations, should have been considered below.

### *Violation of the Injunction*

The injunctive order which was the subject of Horizon's application, provided that:

1. Anthony J. Felicissimo and the Helpers of God's Precious Infants and/or persons and organizations affiliated, acting in concert or participation with, or on behalf of Anthony J. Felicissimo and/or the Helpers of God's Precious Infants shall desist and refrain from: (a) entering or trespassing upon the property of the plaintiff, Horizon Health Center, Jersey City, New Jersey; and (b) from screaming, chanting, singing, speaking, yelling, or producing noise in any other manner, in a volume that interferes with the provision of medical services within the Center; and

2. That said persons or organizations shall desist and refrain from blocking, impeding, inhibiting, or in any other manner obstructing or interfering with access to, ingress into and egress from the Center's premises located at 706–714 Bergen Avenue; and

3. That, except as set forth in para-graph 4, said persons or organizations shall not enter any portion of the sidewalk on the eastern side of Bergen Avenue contiguous to the Center's premises beginning at 706 Bergen Avenue and extending to a point at 36 feet north from the entrance door of the Center at 714 Bergen Avenue [hereinafter "the buffer zone"]; and

4. That quiet sidewalk counselling of a non-threatening nature shall be permitted by a total of not more than four sidewalk counsellors who must stop counselling

when a targeted individual indicates a desire to be left alone; two of said counsellors shall be limited to the sidewalk north and south of the buffer zone, and two sidewalk counsellors shall be permitted on the sidewalk within the buffer zone, provided that no entrance is obstructed; and

 5. That the activity of the demonstrators shall be limited to the sidewalk on the western side of Bergen Avenue opposite the Center; . . . .

There was ample proof that the injunction was violated. On April 5, 1997, two of the anti-abortion protestors forcibly entered the clinic. One was Father John Francis Corbett, a priest assigned to nearby St. Aedan's Church. He first blocked the front door with his body and then, upon entering the clinic, attempted to block the door from inside. A second person assaulted a receptionist and then locked himself in an operating room and attempted to destroy property. Both were arrested.

On April 12, 1997, unaware that the clinic was closed, anti-abortion protestors arrested on April 5 again blocked entrance to the clinic, this time to a patient who mistakenly believed she had an appointment that day.

On April 19, 1997, despite issuance of an April 17 order to show cause with temporary restraints expanded to bar counsellors as well as all protestors from the buffer zone, Father Corbett and two other demonstrators ran across the street and blocked access to the clinic, provoking another arrest.

 It was not disputed that Father Corbett frequently participated with Helpers members in marches, prayer vigils, and in the various anti-abortion expressive activity sponsored by the Helpers on Saturdays at the Horizon clinic. He was also a frequent counsellor, addressing Horizon patients as one of the two counsellors permitted within the buffer zone. Although his disclaimer of membership in Helpers was expressly accepted by the judge and thus is also accepted by us, Father Corbett clearly participated together with Helpers' members and others in their common efforts to influence prospective abortion patients and Horizon staff members against abortion, in counselling or seeking to counsel prospective abortion patients, and in their public expressions of prayer and disapproval. He had been informed of the injunction

and its contents. By virtue of his participation in the anti-abortion activities at Horizon and knowledge of the injunction, Father Corbett was subject to the injunction, along with Helpers members and all others who participated in these activities with awareness of the injunction.

The judge correctly found that Father Corbett violated the injunction. It appears that the injunction may have been violated at least three times by persons subject thereto during the weeks preceding Horizon's request that it be broadened.

### Modification of the Injunction

■ As noted above, the court may consider prior violations of an injunction by persons enjoined in determining whether that injunction requires modification to fulfill its intended purpose. This is consistent with *Madsen v. Women's Health Center, Inc.*, 512 *U.S.* 753, 114 *S.Ct.* 2516, 129 *L.Ed.*2d 593 (1994), where the Supreme Court endorsed the concept of modifying an existing injunction if it fails to fulfil its intended purpose of protecting clinic access. "The failure of the first order to accomplish its purpose may be taken into consideration in evaluating the constitutionality of the broader order." *Id.* at 770, 114 *S.Ct.* at 2527, 129 *L.Ed.*2d at 611.

Moreover, modifications must affect all persons subject to the injunction, here, all those who participate together in anti-abortion activities at the Horizon clinic with awareness of the restrictions that the injunction imposes.

■ In refusing modification because the defendant Helpers and its membership (found to be "amorphous" by the trial judge) were not proved to be responsible for the violations, the judge erred. However, that holding does not end our inquiry.

■ The only modification remedy sought by Horizon is one which would remove the two counsellors presently permitted within the buffer zone. To the extent modification of the injunction's terms is called for, it should bear a relationship to enhancing

protection against the kind of conduct which precipitated the request for modification. *See Options v. Lawson*, 287 *N.J.Super.* 209, 218–19, 670 *A.*2d 1081 (App.Div.1996)(Injunction issues only upon showing of violation or imminent violation of law, and danger of recurrence.) It is not clear to us on the present record, extensive though it is, how restricting the number of sidewalk counsellors in the buffer zone relates to prevention or alleviation of the risk of similarly disruptive conduct in the future. Father Corbett, who has participated as a sidewalk counsellor, did not utilize the proximity afforded by that role to engage in his trespass and blocking actions, although that might well be the case should he continue to be permitted to engage in any activities close to the clinic.

We are mindful of the strong policy protective of anti-abortion advocates' opportunity for respectful, but limited, counselling with patients expressed by the Supreme Court in its *Horizon Health Center* opinion. Enjoining counselling in the buffer zone, which has not been shown to have contributed to the blockage of access or the invasion and destruction of clinic property in the April 1997 incidents, disserves the First Amendment goal, without serving a presently discernible protective role in preventing future incidents. Accordingly, we reverse and remand to the Chancery Division for consideration and entry of a modified injunction which will take account of the history of disruptive incidents, and afford enhanced protection against recurrence.

In formulating such modification, the judge may wish to consider, for example, restrictions upon the distance from the clinic within which the presence of persons who have violated this injunction by disruptive conduct or who have engaged in acts of violence, destruction, harassment or blockage of access at similar sites will be permitted.

Reversed and remanded. We do not retain jurisdiction.