141 N.J. Super. 155 (1976)
357 A.2d 333
ALLENDALE NURSING HOME, INC. A CORPORATION OF NEW JERSEY, ET AL., PLAINTIFFS
v.
BOROUGH OF ALLENDALE, ET AL., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided March 31, 1976.
*156 Mr. C. Conrad Schneider for plaintiffs (Messrs. Schneider, Schneider & Behr, attorneys).
*157 Mr. James J. Dooley for defendants (Messrs. Winne & Dooley, attorneys).
FRANKLIN, J.C.C., Temporarily Assigned.
In this action in lieu of prerogative writs plaintiff Allendale Nursing Home, Inc., together with seven individual plaintiffs, seek to overturn an ordinance (No. 417) enacted by defendant Borough of Allendale which has the effect of making it an offense for vehicles other than "authorized emergency vehicles" to enter or exit one of the two means of access to the nursing home property.
The Allendale Nursing Home is located on approximately 11 acres of land in Allendale. The nursing home structure lies approximately one-quarter of a mile to the west of State Highway 17, a north-south artery. One access to the nursing home property is by a private road from Route 17 via a right of way across the property of others. The other access to the property is on its westerly boundary at a point where it adjoins the cul-de-sac of Harreton Road, a street in an A-1 residential neighborhood. The nursing home building is located within a couple of hundred feet of the cul-de-sac.
In November 1971 the nursing home applied to the Allendale Board of Adjustment for a variance to build a 50-bed addition to its 100-bed facility. Residents of Harreton Road opposed the variance because of the concomitant increase in traffic which would result on their street. In April 1972, following action by the board of adjustment, the application received final approval from the mayor and council upon the following conditions:
(1) * * * Applicant shall prohibit all vehicles, including those of management employees, suppliers, deliverymen, repairmen and visitors from using the Harreton Road cul-de-sac for access or egress. All such traffic shall enter and exit from Route 17. Appropriate notice shall be given to all such persons and signs shall be posted in the nursing home. Exceptions to this are emergency vehicles whose drivers elect to *158 use the cul-de-sac route, such as police, firemen and ambulance corpsmen.
(2) Install Curb  The applicant shall install a curb at the Harreton Road cul-de-sac designed to permit slow passage of emergency vehicles to the nursing home.
(3) Install accessway  A diagonal accessway shall be constructed between the Harreton Road cul-de-sac and the oval driveway.
(4) Install signs  On either side of the accessway, but not at its ends, signs shall be erected which shall read "Do Not Enter  For Emergency Vehicles Only".
In due course the nursing home addition was constructed predicated on the borough council's action.[1]
Early in 1974, complaints were made to the mayor and council concerning the Harreton Road area, claiming that it was still being used by the nursing home for other than emergency purposes. These complaints resulted in the enactment of the ordinance under attack, No. 417. The ordinance was specifically designed to enforce the conditions imposed at the time of the 1972 variance for the addition.
Ordinance 417 is entitled, "An Ordinance Limiting and Restricting the Use of Harreton Road Cul-de-sac for Entrance to and Exit from a Private Road and providing for Penalties for the violation thereof." It provides in part as follows:
SECTION 2 (a) Entrance and Exit Limited. There shall be no vehicular public entrance from Harreton Road cul-de-sac to the private access way to the premises known as the Allendale Nursing Home except for authorized emergency vehicles.
(b) There shall be no vehicular public exit from the premises known as the Allendale Nursing Home onto Harreton Road Cul-de-sac from the private access way located thereon except for authorized emergency vehicles.
*159 SECTION 3 Signs. There shall be regulatory and warning signs posted on the Harreton Road Cul-de-sac prohibiting entrance and exit as hereinbefore set forth except for authorized emergency vehicles.
SECTION 4 Penalties. Any person convicted of a violation of a provision of this ordinance or any amendment thereto shall be subject to a fine not to exceed fifty dollars ($50.00) or imprisonment for a term not to exceed fifteen (15) days, or both, at the discretion of the Magistrate before whom such person shall be convicted.
The effectiveness of the ordinance was conditioned on written approval of the Department of Transportation, as provided in N.J.S.A. 39:4-8, which was given on January 28, 1975.
Plaintiffs assert the municipality's lack of power to adopt Ordinance 417. But there is ample power to legislate locally where the objectives are pedestrian safety and preservation of a residential zone. The crucial issue is the form utilized to exercise the power. Plaintiffs assert that the form chosen here constitutes private or special legislation, and with this contention we agree. Indeed, there is no pretense that this ordinance is a general ordinance.[2] Ordinance 417 expressly singles out an access to a specific named property and applies its provisions solely to that access.
It has been said that the mere fact a class will embrace but one entity which is distinct from all others does not in itself deem legislation as special. Bayonne v. Palmer, 90 N.J. Super. 245, 284 (Ch. Div. 1966). In Bayonne the court dealt with legislation providing for the so-called Aldene Plan and the implementation thereof. The plan had to do with re-routing track to interconnect the Central Railroad with the Pennsylvania Railroad and the Path rapid transit facilities by utilizing trackage of the Lehigh Railroad at a point near the Aldene Tower in Cranford. In contrast, we *160 are here dealing with local penal legislation and on this ground alone the holding in Bayonne is inapposite.
In Budd v. Hancock, 66 N.J.L. 133 (Sup. Ct. 1901), the standard was enunciated by which a law is tested to determine whether it is special or general. The court there said that a law is special in a constitutional sense when, through an inherent limitation, it arbitrarily separates some persons, places or things from others upon which, but for such limitation, it would operate. In other words, what makes a law special is not what it includes but rather what it excludes. The question in every case, where the determination of whether a law is special or general is the overriding issue, is whether any appropriate object is excluded from the effect of the law.
This court, applying the standard enunciated in Budd, finds that this ordinance is special. Ordinance 417 was enacted by defendant municipality to enforce the conditions of a variance granted in 1972 to the Allendale Nursing Home. The ordinance provides a fine or imprisonment, or both, for anyone convicted of violating its provisions. It is reasonable to infer that there have been other variances granted by the municipality to which conditions are attached. Indeed, it is well settled that a board of adjustment and the governing body have the right to attach conditions to the issuance of variances in order to protect the public's health, safety and welfare. See Alperin v. Middletown Tp. Mayor and Comm'n, 91 N.J. Super. 190 (Ch. Div. 1966). Through Ordinance 417 the municipality is selectively enforcing, by imposition of a penalty, only the conditions of the variance granted to the nursing home. The ordinance has effectively excluded all other variances granted by the municipality to which conditions are attached. This selective enforcement is deemed special legislation by this court.
The determination that Ordinance 417 is special legislation is also based on the restrictive nature of an ordinance which prohibits future persons, places or objects from coming within the purview of the legislation. Classifications in *161 legislation must be prospective in nature and permit the future entrance into a class when certain qualifications and standards are met. 2 Sutherland, Statutory Construction (3 ed. 1943), § 2106 at 20. If the municipality had drafted a general ordinance penalizing all persons who violate the conditions of zoning variances, the class would remain open to any member who naturally would be included. It seems clear that authority for this type of legislation is found in N.J.S.A. 40:55-47. Furthermore, N.J. Const. (1947), Art. IV, § VII, par. 9, states that general laws rather than special or private acts must be passed "for all * * * cases which * * * may be provided for by general laws." The special legislation enacted here in lieu of general legislation is sapped of legitimacy by this constitutional precept. See Alfred Vail Mut. Ass'n v. New Shrewsbury, 58 N.J. 40 (1971).
Defendant implies that because the Department of Transportation approved Ordinance 417 the ordinance is valid. The Department, however, reviews an ordinance to determine whether it is "in the interest of safety and the expedition of traffic on the public highways." N.J.S.A. 39:4-8. This determination does not include a review of whether an ordinance may be invalid for the reasons enunciated today by this court.
The decision by this court to invalidate Ordinance 417 does not leave the municipality without remedies to enforce the conditions of the variance. Aside from enactment of a new ordinance[3] free from the special legislation defect, there are traditional remedies which include the following: (1) a suit seeking injunctive relief; (2) a prosecution of the property owner seeking to impose penalties provided for violation of the local zoning ordinance, and (3) a proceeding to declare the variance forfeited. See Walle v. So. Brunswick *162 Bd. of Adj., 124 N.J. Super. 244 (App. Div. 1973). Since the courts do not look kindly upon forfeitures, the last approach is hardly a viable one. Id. at 247. But neither that fact nor the borough's feeling that the first two traditional remedies are inadequate can render valid a constitutionally defective ordinance.
Defendant argues that injunctive relief would be insufficient because of the necessity of bringing repeated actions in the Superior Court.[4] In the case of Cahill v. Heckel, 87 N.J. Super. 201 (Ch. Div. 1965), the court commented upon the potential effectiveness of injunctive relief as compared to the imposition of a modest fine by a magistrate. In speaking of the efficacy of injunctive relief, the court cited Donovan v. Superior Court of Los Angeles Cty., 224 P.2d 911 (D. Ct. App. 1951), where the enjoined property owners were held in contempt and fined $2,000 and $4,500, respectively. Need more be said as to how or why equitable relief is adequate to the task and is unlikely to result in repetitious proceedings?
Defendant also states that enforcement of the conditions would be difficult because the municipality's police would have to patrol the Harreton Road area constantly to apprehend violators of the conditions. However, a private citizen can enjoin a neighbor's violation of a zoning ordinance if that citizen's interest in the suit is distinct from and greater than that of the community. Garrou v. Teaneck Tryon, 11 N.J. 294 (1953). And this right inures to a private citizen although a municipality has pursued the violation in a penalty proceeding. Cahill v. Heckel, supra. Furthermore, L. 1969, c. 277 amended N.J.S.A. 40:55-47, the enforcement and remedies provision of the Zoning Act, to give "any other interested party," in addition to other remedies, the right to institute proceedings to prevent violation of a zoning ordinance. The 1969 amendment added *163 N.J.S.A. 40:55-47.1, which defines an "other interested party" as
(a) any citizen of the State of New Jersey; and
(b) in the case of a civil proceeding in any court or in an administrative proceeding before a municipal agency, any person, whether residing within or without the municipality, whose right to use, acquire, or enjoy property is or may be effected by any action taken under the act to which this act is a supplement, or whose rights to use, acquire, or enjoy property under the act to which this act is a supplement, or under any other law of this State or of the United States have been denied, violated or infringed by an action or a failure to act under the act to which this act is a supplement.
Thus, it seems likely that the neighboring residents of Harreton Road would have standing to seek relief against violations of the variance condition based on the foregoing case and statutory law. The municipality's concern that enforcement of the condition of the variance would be difficult appears overdrawn.
For the reasons expressed herein, Ordinance 417 is declared invalid.
NOTES
[1] Plaintiffs, through this action in lieu of prerogative writs, attempt to attack the conditions of the 1972 variance granted to them by the municipality. Such right of review accrued in 1972, however, and is barred by R. 4:69-6(b) (3).
[2] For example, we are not dealing with an ordinance to the effect that no person shall knowingly violate a condition of a variance and any person doing so shall be subject to a prescribed penalty.
[3] See, for example, footnote 2. Of course, a penal ordinance can only be made applicable to violations occurring after its enactment.
[4] The municipality has chosen not to seek equitable relief by way of counterclaim in this action.