7 A.3d 225 (2010)
416 N.J. Super. 555
WASHINGTON COMMONS, LLC, Plaintiff-Appellant,
v.
CITY OF JERSEY CITY, Mariano Vega, Jr., Jersey City Redevelopment Agency, Members of the Jersey City Redevelopment Agency and Mayor Jerramiah Healy, the City of Jersey City Board of Adjustment, and the City of Jersey City Department of Housing, Economic Development and Commerce, Defendants-Respondents.
No. A-0779-09T1.
Superior Court of New Jersey, Appellate Division.
Submitted October 19, 2010.
Decided November 12, 2010.
*226 Buttafuoco, Arce & Price, LLC, attorneys for appellant (Nicholas R. Buttafuoco, South Plainfield, on the brief).
William C. Matsikoudis, Corporation Counsel, attorney for respondents City of Jersey City, Mayor Jerramiah Healy, Councilman Mariano Vega, Jr., and the City of Jersey City Department of Housing, Economic Development and Commerce (Judith D. O'Donnell, Assistant Corporation Counsel, on the brief).
Vincent J. LaPaglia, Union City, attorney for respondent the City of Jersey City Board of Adjustment.
Before Judges SKILLMAN, PARRILLO and YANNOTTI.
The opinion of the court was delivered by
PARRILLO, J.A.D.
Plaintiff, Washington Commons, LLC, appeals from an August 14, 2009 order of the Law Division enforcing defendant City of Jersey City Board of Adjustment's (Board) November 8, 2007 resolution requiring plaintiff to convey to defendant City of Jersey City (City) fee simple absolute title to seven affordable housing units for $1.00 per unit. For reasons that follow, we reverse.
The background to this matter has been extensively detailed in our earlier opinion affirming the dismissal of plaintiff's first prerogative writs complaint. Wash. Commons, LLC v. City of Jersey City, No. A-6560-06T2, 2009 WL 137330 (App.Div. Jan. 22, 2009), certif. denied, 199 N.J. 515, 973 A.2d 383 (2009). We reiterate and update those facts only as relevant here.
In early 2004, plaintiff sought variances from the Board for the construction of a fourteen story, sixty-eight unit residential building, as well as twenty-year tax abatements for each unit. The original plan contained sixteen fewer units than that which was submitted to the Board. On May 20, 2004, the Board approved plaintiff's variance, conditioned on making seven of the additional sixteen units affordable artist live/work units. Its memorializing resolution provided that the seven units were to be conveyed to "the City or its designated agent, which at this time is the [Jersey City Redevelopment Corporation], for rental to low and/or moderate income certified artists in accordance with such terms and conditions as are negotiated by [plaintiff] and the City ...." (emphasis added).
Thereafter, a dispute arose over the interpretation of the "negotiations" clause in the Board's May 20, 2004 resolution. The City contended plaintiff intended to donate the additional units to the City in order to satisfy a statutory "beneficial use" provision. *227 Plaintiff, on the other hand, maintained that seven of the additional units were to be sold to the City at cost, namely $463,235.29 per unit. As noted, the Board's resolution was silent as to this issue, referring only to the existence of conditions to be negotiated.
On February 17, 2007, plaintiff filed a complaint in lieu of prerogative writs (Washington Commons I) challenging municipal action in refusing to purchase the seven affordable housing units at plaintiff's cost and in declining to issue certificates of occupancy to allow the remaining units to be sold to the general public. The Law Division granted the municipal defendants' motion to dismiss, finding plaintiff's claim time-barred as beyond the forty-five day limitation of Rule 4:69-6(a), having determined the cause of action accrued, at the latest, in October 2006, when "price" negotiations broke down. We affirmed, reasoning:
Viewed in this context, the court reasonably found that the prerogative writs aspect of plaintiff's claim accrued, at the very latest, in October 2006 when the parties reached an irretrievable impasse. And plaintiff having offered no reason to enlarge the 45-day period, the court properly found the prerogative writs counts time-barred.
Plaintiff's complaint in this regard also fails for want of exhaustion of administrative remedies. It bears repeating that plaintiff proceeded in the Law Division on the basis of the City's position in negotiations without any determination by the Board as to whether that position was consistent with the Board's May 20, 2004 resolution. Since the true matter in controversy concerned the interpretation of the resolution's "negotiations clause," we believe it was incumbent upon plaintiff to first make timely and appropriate application to the Board for clarification.
...
Not only did plaintiff fail to exhaust its administrative remedy before seeking judicial relief, it also refused to return to the Board upon the court's recommendation. This blatant bypassing of an obvious administrative remedy prevented any meaningful review of the critical matter at handnamely the construction of the Board's May 20, 2004 resolutionand left plaintiff only the penultimate issue concerning the City's negotiating position, which the court properly found to be time-barred.
[Wash. Commons, LLC v. City of Jersey City, supra, slip op. at 13-15.]
During the pendency of that appeal, the Board, at its November 8, 2007 meeting, decided its May 20, 2004 resolution required plaintiff to donate the seven affordable housing units to the City and that price was never intended to be a term to be negotiated. Specifically, the Board declared that "`[c]onditions to be negotiated' as stated in the resolution were conditions other than price, since it was understood that the units were to be conveyed to the city or its designated agency for $1." In response, on December 24, 2007, plaintiff filed a second complaint in lieu of prerogative writs (Washington Commons II) challenging the Board's November 8, 2007 "clarification." Pursuant to the municipal defendants' motion to dismiss, by order of April 11, 2008, the Law Division dismissed plaintiff's second complaint as time-barred and precluded by res judicata, finding that because plaintiff did not exhaust its administrative remedies before the Board, and further that the Board's so-called "clarification" had actually been the Board's position all along, nothing had changed in the relationship between the parties since *228 Washington Commons I. In the course of its opinion, the Law Division commented:
[T]here would be little doubt in my mind that the decision of the conveyance for a dollar a piece would in fact be my conclusion. The Planner's report which was the basis of the action of the Board of Adjustment was something they relied upon. It was something that was in my opinion and experience had to have been provided to Mr. Colling, to the architect, to the attorney.
And furthermore I'm satisfied from the additional transcript that I've now seen regarding the testimony of the person from the arts community that everyone that was there expected that the units were to be conveyed for a dollar.
Plaintiff never filed a notice of appeal challenging the Law Division's decision in Washington Commons II.
Following our decision affirming the Law Division's June 14, 2007 order dismissing plaintiff's first prerogative writs complaint, the City requested that plaintiff convey the units to the City. When plaintiff failed to do so, on June 5, 2009, the City moved to enforce the judgment of the Law Division. Plaintiff opposed the motion. On August 14, 2009, the trial court entered an order of enforcement requiring plaintiff to convey the seven units to the City for $1.00, and thereafter, on September 25, 2009, denied plaintiff's motion for reconsideration.
This appeal follows in which plaintiff argues that the court erred in granting defendants affirmative relief without a complaint seeking injunctive or other appropriate action. We agree.
As a threshold matter, we note that just as a "trial court's interpretations of the law and the legal consequences that flow from established facts are not entitled to any special deference[,]" Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995), its interpretation of court rules is also subject to de novo review. See Myron Corp. v. Atl. Mut. Ins. Corp., 407 N.J.Super. 302, 309, 970 A.2d 1083 (App. Div.2009), aff'd o.b., 203 N.J. 537, 4 A.3d 999 (2010). Accordingly, we review de novo the trial court's entry of the order, inasmuch as it was based on the application of legal principles.
Zoning variances are often made subject to conditions, contravention of which constitute violations of land use ordinances. Cox, N.J. Zoning & Land Use Administration § 28-4.8 (2008). New Jersey's Municipal Land Use Law provides that municipal governing bodies shall enforce those ordinances and regulations made thereunder. N.J.S.A. 40:55D-18. "To that end, the governing body may require the issuance of specified permits, certificates or authorizations as a condition precedent to" the construction, use or occupancy of a building or structure. Ibid. The Municipal Land Use Law further provides that
[i]n case any building or structure is erected, constructed, altered, repaired, converted, or maintained, or any building, structure or land is used in violation of ... any ordinance or other regulation made under authority conferred hereby, the proper local authorities of the municipality or an interested party, in addition to other remedies, may institute any appropriate action or proceedings to prevent such unlawful erection, construction, reconstruction, alteration, repair, conversion, maintenance or use, to restrain, correct or abate such violation, to prevent the occupancy of said building, structure or land, or to prevent any illegal act, conduct, business or use in or about such premises.
[Ibid. (emphasis added).]
*229 Of course, variances or conditions are not self-executing. Even so, it is not the function of the municipal agency to enforce them. Cox, supra, § 28-4.8. As Cox explains:
The board may learn that a condition attached to a variance has been violated. That fact or suspicion should be reported to the zoning officer or other official of the municipality charged with the enforcement of the zoning, subdivision or site plan ordinance. If there is a violation of an on-going condition it constitutes a violation of the land use ordinance and the municipality may institute a suit for injunctive relief or may institute any other appropriate action, including complaint in the municipal court.
[Ibid.]
Thus, a variance or condition is enforced via a complaint for injunctive relief, specific performance or other appropriate action brought by the municipality. See Allendale Nursing Home, Inc. v. Borough of Allendale, 141 N.J.Super. 155, 161, 357 A.2d 333 (Law Div.1976), aff'd, 149 N.J.Super. 286, 373 A.2d 714 (App.Div.1977).
Here, the City chose to enforce the Board's resolutions of May 20, 2004 and November 8, 2007 via motion rather than a complaint filed in the Law Division. However, there was no extant cause of action or substantive court order to which its enforcement motion related. The Law Division had previously dismissed plaintiff's two successive prerogative writs actions and no appeal was taken from the final order of dismissal. Defendants never filed a counterclaim and jurisdiction was not retained. Although we understand defendants' desire for speedy relief given the years of litigation in this matter, defendants may only obtain that relief in accordance with law and procedural requisites. The fact remains that at the time defendants filed their enforcement motion, there was neither a pending action in the Law Division within which their continuing controversy could be resolved, nor a court order susceptible of enforcement. Having failed to file the appropriate predicate action, we are constrained to vacate the Law Division's consequent enforcement order.
That said, we consider it appropriate to address plaintiff's argument that full discovery and a plenary hearing would be necessary upon the filing of any prospective complaint by the City. Plaintiff, however, does not identify any "material fact" in the Board's Resolution that remains unresolved aside from the cost of the units and only vaguely suggests that timing of the conveyance "could be" in issue. In fact, plaintiff concedes, "[t]he question to be raised at this point would be what were the terms to be negotiated, the fact that no other terms were being negotiated other than the price [sic]." (emphasis added).
As to price, the Board's clarifying resolution of November 8, 2007 has never been successfully challenged. Indeed, the Law Division, in its decision granting defendants' enforcement motion, observed:
Both this Court, I find, and the Appellate Division have already explicitly found that all the parties to this complaint understood the cost of conveyance per unit to be a dollar and, therefore, there is no issue of material fact that needs to be litigated.
The orders dismissing the complaints imply a court enforcement of the 2004 Board resolution granting the plaintiff's development application. The resolution authorized the construction of 68 condominium units, conditioned on the subsequent conveyance of seven units to the City to be designated for rental [sic] by low and/or moderate income certified artists. Because the Court has already ruled that the resolution is binding the one dollar per unit price is reasonable, *230 the defendant's motion to enforce the resolution should be granted.
[(emphasis added).]
And in our affirmance of the order dismissing Washington Commons I, we commented:
At the core of plaintiff's original action in lieu of prerogative writs, filed February 17, 2007, is a challenge to municipal action in failing to purchase the seven affordable housing units at plaintiff's cost ... and in refusing to issue certificates of occupancy to allow the remaining units to be sold to the general public.
....
As noted, the challenged official action is the municipality's refusal to pay plaintiff its cost per affordable housing unit. Yet, plaintiff knew as far back as the original hearing on its site plan and variance application that the 2004 Planning Report relied upon by the Board expressly stated that the seven units were to be conveyed to the City at no cost, and testimony at the hearing corroborated this was the interested community's sentiment as well. Moreover, at meetings on plaintiff's tax abatement application in July and August 2005, the City's position that these units were to be "donated" was made abundantly clear. And if the councilman's "demand" cannot be said to constitute sufficient notice, then the termination of negotiations in October 2006 with no resolution of the issue should have left no doubt that the City would not accede to plaintiff's demand of cost per unit....
[Wash. Commons, LLC v. City of Jersey City, supra, slip op. at 9, 12-13 (emphasis added) (footnotes omitted).]
In addition, we noted that "[s]ubsumed within that order of dismissal [of Washington Commons II] is the Law Division's incidental finding that the Board's November 8, 2007 decision that price, having been fixed at $1.00, was not a negotiable term, was neither arbitrary, capricious nor unreasonable." Id. at 9.
Under the doctrine of the law of the case, a party cannot relitigate a previously resolved issue. See Monaco v. Hartz Mountain Corp., 178 N.J. 401, 413, 840 A.2d 822 (2004); see also Pressler & Verniero, Current N.J. Court Rules, comment 4 on R. 1:36-3 (2011) ("`Law of the case' is a non-binding discretionary rule intended, unless there is good cause not to do so, to avoid relitigation before the same court of the same issue in the same controversy-good cause including substantially different evidence, new controlling authority or a showing that the prior ruling was clearly erroneous."). The doctrine "should be applied flexibly to serve the interests of justice[,]" State v. Reldan, 100 N.J. 187, 205, 495 A.2d 76 (1985), and "is grounded in the policy that once an issue is litigated and decided in a suit, relitigation of that issue should be avoided if possible." Sisler v. Gannett Co., 222 N.J.Super. 153, 159, 536 A.2d 299 (App.Div.1987), certif. denied, 110 N.J. 304, 540 A.2d 1283 (1988). Moreover, "the doctrine is more stringent when it is applied to a prior appellate decision in the same case." SMB Assocs. (Anchoring Point) v. N.J. Dep't of Envtl. Prot., 264 N.J.Super. 38, 60, 624 A.2d 14 (App.Div. 1993), aff'd, 137 N.J. 58, 644 A.2d 558 (1994). On this score, if an issue, such as one concerning a variance, has been determined on the merits in a prior appeal it cannot be relitigated in a later appeal of the same case, even if of constitutional dimension. See State v. Cusick, 116 N.J.Super. 482, 485, 282 A.2d 781 (App. Div.1971).
Given its history and the interim rulings, it appears likely that the present matter may be completely disposed of in a summary manner, Rule 4:67-1(b), with the filing *231 of a complaint accompanied by the appropriate request for relief. R. 4:67-2. The summary action rule is designed "to accomplish the salutary purpose of swiftly and effectively disposing of matters which lend themselves to summary treatment while at the same time giving the defendant an opportunity to be heard at the time plaintiff makes his application on the question of whether or not summary disposition is appropriate." Pressler & Verniero, supra, comment 1 on R. 4:67-1. For reasons already noted, the instant matter appears to so qualify.
Reversed.