**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3365-21
             A-0678-22
             A-0681-22
             A-0898-22

JOSEPH P. FAZZIO
ORGANIZATION, LLC,

      Plaintiff-Respondent,

v.

JASON GILOLEY, STEEL AND
METAL SERVICE CENTER
POTTSVILLE, PA, LLC, STEEL
AND METAL SERVICE CENTER
NEW CASTLE, DE, LLC, and
IDEAL SURPLUS, LLC,

      Defendants-Appellants/
      Cross-Respondents,

and

HAROLD GILOLEY,

      Defendant-Respondent/
      Cross-Appellant,

and

STEEL AND METAL HOLDINGS, LLC,

     Defendant.

_____

JOSEPH P. FAZZIO ORGANIZATION, LLC,

     Plaintiff-Respondent,

v.

JASON GILOLEY, HAROLD GILOLEY, STEEL AND METAL SERVICE CENTER POTTSVILLE, PA, LLC, STEEL AND METAL SERVICE CENTER NEW CASTLE DE, LLC, and IDEAL SURPLUS, LLC,

     Defendants-Respondents,

and

STEEL AND METAL HOLDINGS, LLC,

     Defendant.

_____

NEW JERSEY STEEL HOLDINGS, LLC, KANE GILOLEY, and RONALD CARVER, SUSANNE CAPUTO, a/k/a SUSAN CAPUTO, FRANCIS S. MURPHY, and BAYPOINT INDUSTRIAL

SURPLUS, LLC,

 Appellants.

_____

Argued May 22, 2024 - Decided August 14, 2024

Before Judges Currier, Susswein and Vanek.

On appeal from the Superior Court of New Jersey, Chancery Division, Gloucester County, Docket No. C-000051-19.

Jeffrey Scott Downs argued the cause for appellants/cross-respondents Jason Giloley, Steel and Metal Service Center Pottsville, PA, LLC, Steel and Metal Service Center New Castle, DE, LLC, and Ideal Surplus, LLC in A-3365-21, and respondents Jason Giloley, Steel and Metal Service Center Pottsville, PA, LLC, Steel and Metal Service Center New Castle, DE, LLC, and Ideal Surplus, LLC in A-0678-22, A-0681-22, and A-0898-22 (J. Downs Law, attorneys; Jeffrey Scott Downs, on the briefs).

Raymond J. Went, Jr. argued the cause for appellants New Jersey Steel Holdings, LLC, Kane Giloley, and Ronald Carver in A-0678-22 (Nehmad Davis & Goldstein, PC, attorneys; Dante B. Parenti and Michael Carmine Donio, on the briefs).

Susanne Caputo, appellant pro se in A-0681-22 (Todd W. Heck, on the briefs).

Lee Joseph Hughes argued the cause for appellants Francis S. Murphy and Baypoint Industrial Surplus, LLC in A-0898-22 (Gruccio Pepper De Santo & Ruth, PA, attorneys; Lee Joseph Hughes, on the briefs).

3

R. James Kravitz argued the cause for respondent/cross-appellant Harold Giloley in A-3365-21, and respondent Harold Giloley in A-0678-22, A-0681-22, and A-0898-22 (Fox Rothschild LLP, attorneys; R. James Kravitz, of counsel and on the briefs; A. William Henkel, on the briefs).

Francis P. Maneri argued the cause for respondent Joseph Fazzio Organization, LLC (Dilworth Paxson LLP, attorneys; Steven Howard Doto and John C. Eastlack III, on the briefs).

PER CURIAM

In the course of dissolving a family steel business, the Joseph P. Fazzio Organization, LLC (Fazzio Organization or Fazzio), pertinent family members executed a settlement agreement that included a non-compete clause regarding the respective operations of the businesses in New Jersey, Pennsylvania, and Delaware. After believing that certain family members were not complying with the non-compete agreement, Fazzio moved to enforce the settlement agreement.

Without conducting a hearing, and despite conflicting certifications, the trial court determined that certain family members had used "straw parties" to purchase and incorporate a facility to sell steel in violation of the settlement and non-compete agreements. Therefore, the court granted the motion to enforce the settlement order and granted an injunction, ordering several non-parties to cease operations.

Thereafter, the non-parties affected by the order moved to intervene and vacate the court's order. The court denied the motions. Because we conclude the intervenors satisfied the requisites under Rule 4:33-1 to intervene in the litigation after their businesses were shut down, it was error to deny their motions without discovery and a plenary hearing. We reverse the orders in A-0678-22, 0681-22, and 0898-22.

Since any determination regarding the intervenors' interests is so intertwined with the proofs concerning the issue of whether the settlement agreement was violated, we vacate the orders granting the enforcement of the settlement agreement and for the award to Fazzio of counsel fees in A-3365-21. All parties and intervenors shall have the opportunity for discovery. If the parties cannot resolve their issues, the court will conduct a plenary hearing to determine whether there was a violation of the settlement agreement.

I.

Christopher Fazzio and Susanne Caputo are the children of Joseph, who founded the Fazzio Organization. Prior to the disputes at issue, Christopher[1]

---

[1] Because several of the individuals involved share surnames, we refer to them by their first names.

was the managing partner of the organization, which had facilities in New Jersey, Pennsylvania, and Delaware. Susanne had worked for Fazzio in the past.

Susanne has two sons—Harold and Jason Giloley (Giloley brothers). Kane Giloley—Jason's son—is her grandson.

The Giloley brothers were minority shareholders in the Fazzio Organization until 2018, when they executed a redemption agreement with Fazzio. In exchange for their combined share, the redemption agreement granted the brothers joint ownership of Steel and Metal Holdings, Inc. (SMH), a holding corporation that owned Fazzio's facilities in New Castle, Delaware (Delaware facility), and Pottsville, Pennsylvania (Pennsylvania facility).

The redemption agreement contained mutual non-compete clauses which restricted the Giloley brothers from soliciting customers or operating a steel retail or related business within New Jersey and prevented the Fazzio Organization from soliciting or conducting business in Delaware or Pennsylvania. Fazzio continued to operate a retail steel operation in New Jersey. The agreement stated that until 2069, Jason, Harold, SMH, the Delaware and Pennsylvania facilities, and their affiliates or co-ventures could not compete "directly or indirectly, either individually as owner, investor, partner, agent,

employee, consultant or otherwise, in the entire State of New Jersey." It further stated they could not:

> i. establish or maintain any business location of any kind, except as provided in this Paragraph 3,
>
> ii. directly or indirectly, compete with [Fazzio] or any of its subsidiaries or affiliates by providing similar goods or services as those provided by [Fazzio] as of the Effective Date,
>
> iii. become interested, financially, by providing backing or otherwise, in any business that is the same or that is substantially similar to or that is competitive, in any way, with the business of [Fazzio], its subsidiaries, affiliates[,] and related entities in the State of New Jersey as of the Effective Date,
>
> iv. purchase (whether by inquiry of or from private parties or otherwise), process, fabricate and/or sell or deliver metal products, hardware components, surplus equipment, industrial items[,] and or commodities (collectively "Material"),
>
> v. advertise or solicit any business in the State of New Jersey by advertising or sales calls by phone or in person.

At some point Christopher learned that the Giloley brothers were operating a steel resale facility in Pilesgrove, New Jersey (Pilesgrove facility) and selling materials online under the name Ideal Surplus, LLC. Christopher retained a private investigator who bought three items of "industrial surplus" from the Pilesgrove facility, two of which appeared to be made of steel.

7

Thereafter, Fazzio filed a complaint against the Giloley brothers, SMH, the Delaware and Pennsylvania facilities, and Ideal Surplus, alleging the defendants breached the non-compete agreement. During a court-ordered mediation in January 2020, the parties negotiated and executed a settlement agreement.

The agreement was memorialized in a written document in July 2020. In the settlement agreement, the parties modified the non-compete provision by granting the Giloley brothers a five-year license to store inventory at the Pilesgrove facility. They were prohibited from selling any materials or products. The settlement agreement contained a clause stating that in the case of an "action, suit, litigation[,] or proceeding to enforce any of the terms of this [a]greement," the prevailing party is "entitled to recover . . . all costs, expenses[,] and reasonable attorneys' fees."

## II.

In 2020, Susanne, who was not subject to the non-compete agreement, formed Suzway, LLC. In 2021, Suzway bought a steel retail lot in Cedarville, New Jersey (Cedarville facility) with her personal funds.

In 2021, New Jersey Steel Holdings, LLC (NJ Steel) was formed, with Kane as its managing member and two other owners, Lance Wilks and John

A-3365-21

Peterson, both of whom had worked for the Giloley brothers. Thereafter Susanne sold the Cedarville facility to NJ Steel via a seller-held mortgage in the amount of $867,000. The agreement between Susanne and NJ Steel specified NJ Steel would make 120 payments over the next ten years in monthly installments of $8,323.54, and that Kane was the sole personal guarantor of the mortgage note.

Baypoint Industrial Surplus, LLC (Baypoint) was formed in June 2021, and leased space at the Cedarville property from NJ Steel. Baypoint is owned by Francis S. Murphy, a former employee of the Giloley brothers at the Pilesgrove facility. Baypoint is an e-retail business that sells surplus materials on eBay. Fazzio documented the purchase of an item from Baypoint in December 2021, that bore a shipping label indicating the item was sent from the Cedarville facility.

Fazzio's private investigators presented evidence through certifications of trucks owned by Giloley's Delaware facility unloading and picking up "steel, metal products, and other materials at the Cedarville [f]acility, and then driv[ing] back to [the Delaware facility]."

Fazzio filed a second motion to enforce the settlement agreement, alleging the Giloley brothers and the Delaware and Pennsylvania facilities violated the

2020 agreement, specifically the non-compete provision. In response, defendants submitted a certification from Susanne asserting she had experience in the steel industry, as she worked for both her father and brother, Christopher. She stated she formed Suzway, purchased the Cedarville property with her own funds, and that the Giloley brothers were not involved with the Cedarville facility.

Susanne certified:

> I have no restrictions on competition with my [b]rother or owning my own steel business.
>
> . . . Due to the COVID-19 Pandemic I looked to sell this Property and business and met personally with my [g]randson, Kane Giloley, and asked if he wanted to continue the business.
>
> . . . Kane Giloley looked at this opportunity as what he envisioned his career, as it was discussed at a young age, and he formed his own company to buy both the Property and the business.
>
> . . . I have financed my [g]randson and his business purchase via a [s]eller[-]held mortgage and [p]romissory [n]ote.
>
> . . . Harold and Jason Giloley had no involvement or input in this decision, did not finance this decision, and have not received any monetary gain from this decision.

A-3365-21

Defendants also provided a certification from Kane with statements consistent with Susanne's assertions and stating further that he "ha[d] experience in the steel industry since a very early age" and that his father and uncle "had no involvement in this decision."

Defendants also presented a certification from Thomas Frank. He explained that he is Christopher's cousin and had worked for him at various times, even while Frank owned his own steel transportation business and truck. He admitted his business bought a truck from the Giloley brothers' business but asserted he was acting on behalf of his own business interests when he transported steel and other materials to and from the Delaware facility and the Cedarville facility. Frank denied moving any product from the Pilesgrove facility to another New Jersey location.

During continued surveillance of the Giloley brothers and Kane, Fazzio's investigators observed Kane working at the Delaware facility with Peterson. They also saw Wilks at the Delaware facility wearing a blue company tee shirt with the text "STEEL & METAL " and "SHOPMETAL.com" printed on it and assisting a customer at a point of sale.

On March 4, 2022, the court granted Fazzio's motion to enforce the 2020 settlement agreement. In a written decision, the court found "by clear and

A-3365-21

convincing evidence that the Cedarville facility is at its best a related facility to the Giloley businesses and at its worst a complete strawman business facility. Both are violations of the [s]ettlement agreement."

The court noted that Susanne bought the Cedarville facility and that a Delaware facility truck was

> transporting steel and other materials to and from the Cedarville [f]acility and the Giloleys' Delaware facility revealing a pattern of these two facilities sharing steel, metal products, and other materials. What appear to be many of the same materials that were stored at the Pilesgrove [f]acility are now stored at the Cedarville [f]acility. Finally, Jason, an [eighteen]-year-old, is listed as running a business out of the Cedarville facility by himself.
>
> . . . As soon as the Cedarville location was established it was in violation of the [settlement] agreement.

The court ultimately found

> by clear and convincing evidence that the Cedarville Owners are mere straw men and women for the Giloleys, and that the operation of the Cedarville [f]acility in the names of the Cedarville Owners is a subterfuge to permit the Giloleys to violate the restrictive covenants . . . of the [r]edemption [a]greement and reaffirmed in . . . the [s]ettlement [a]greement.

The court stated:

12

The Giloleys violated . . . the [s]ettlement [a]greement by, in New Jersey, indirectly or directly:

(1) establishing and maintaining unauthorized businesses, i.e., the Cedarville Entities, to operate the Cedarville [f]acility; (2) competing with Fazzio by selling steel, surplus items, and other metal products out of the Cedarville [f]acility; (3) storing these materials at the Cedarville [f]acility; and (4) using the Cedarville [f]acility to conduct activities related to [the Delaware facility].

The court enjoined the Giloleys and the "Cedarville Entities" from:

A. Establishing or maintaining any business location of any kind except as authorized by Section 4 of the Redemption Agreement;

B. Competing with Fazzio or any of its subsidiaries or affiliates by providing similar goods or services as those provided by Fazzio;

C. Becoming interested, financially, by providing backing or otherwise, in any business that is the same or substantially similar to or that is competitive in any way, with Fazzio, its subsidiaries, affiliates, and related entities.

D. Purchasing, processing, fabricating, and/or selling or delivering metal products, hardware components, surplus equipment, industrial items and/or commodities;

E. Advertising or soliciting any business by advertising or sales calls by phone or in person;

F. Using real estate to store, distribute, process, or fabricate metal or hardware products or engage in

13

any prohibited activity listed in (a) through (e), above;

G. Using real estate to conduct activities, including, without limitation, office, telephone, accounting, bookkeeping, communication, or any other activity related in any way to the business of [the Delaware or Pennsylvania facilities].

H. Ceasing any conduct addressed in (a)—(g), above at the Cedarville [f]acility within thirty days of the date of the accompanying Order.

The Cedarville entities were identified as Suzway, Steel & Metal Supply, LLC, NJ Steel, and Baypoint. Fazzio served a cease-and-desist letter on the Giloley brothers and the Cedarville entities to stop all operations at the Cedarville facility.

Defendants' subsequent motion for reconsideration was denied. The court awarded Fazzio $50,398.60 in attorneys' fees.

## III.

Thereafter, NJ Steel, Kane, Ronald Carver,[2] Baypoint, Murphy, and Susanne (intervenors) filed motions in the trial court to vacate its orders and intervene in the litigation. After oral argument, the court denied the motions on September 23, 2022, in an oral decision and accompanying order. The court

---

[2] Carver was the president and registered agent for Steel & Metal Supply at the Cedarville address.

stated the intervenors' motions were untimely and their interests were aligned with those of the Giloley brothers. Therefore, their arguments had been presented and rejected by the court.

IV.

On appeal, the intervenors and Giloley brothers contend the trial court erred in finding the intervenors were not necessary parties under Rule 4:28-1(a)(2) or intervenors as of right under Rule 4:33-1, and the court should have held a plenary hearing as the parties presented conflicting certifications regarding the issues. The Giloley brothers also challenge the award of counsel fees as excessive.

"Our Rules of Court govern intervention at trial, and the trial court's interpretation of those rules is subject to our de novo review." N.J. Dep't of Env't Prot. v. Exxon Mobil Corp., 453 N.J. Super. 272, 285 (App. Div. 2018) (citing Wash. Commons, LLC v. City of Jersey City, 416 N.J. Super. 555, 560 (App. Div. 2010)). "We apply familiar canons of statutory construction to interpret the court rules[,] . . . look[ing] first to the plain language . . . and giv[ing] the words their ordinary meaning." Ibid. (alterations in original) (quoting Robertelli v. N.J. Off. of Att'y Ethics, 224 N.J. 470, 484 (2016)).

The intervenors and Giloley brothers assert both Rule 4:28-1(a)(2) and Rule 4:33-1 support their arguments for intervention. However, we need not analyze those arguments separately. As this court observed in Exxon Mobil, after comparing these two rules to their analogues under the Federal Rules of Civil Procedure, "a court must grant intervention if the putative intervenor is on the same footing as someone the court must otherwise 'join[ ] as a party to the action.'" 453 N.J. Super. at 288-289 (alteration in original) (quoting R. 4:28-1(a)). "As one federal court explained, '[t]he only difference between intervention of right under [the analogous federal rule] and joinder under [the analogous federal rule] is which party initiates the addition of a new party to the case.'" Ibid. (alterations in original) (quoting N.Y. State Ass'n for Retarded Child., Inc. v. Carey, 438 F. Supp. 440, 445 (E.D.N.Y. 1977)).

Rule 4:28-1(a) states in pertinent part:

> A person who is subject to service of process shall be joined as a party to the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest in the subject of the action and is so situated that the disposition of the action in the person's absence may either (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or other inconsistent obligations by reason of the claimed interest.

16

Rule 4:33-1 states:

> Upon timely application anyone shall be permitted to intervene in an action if the applicant claims an interest relating to the property or transaction which is the subject of the action and is so situated that the disposition of the action may as a practical matter impair or impede the ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Exxon Mobil states that under Rule 4:33-1, a party must be joined where it can

> (1) claim "an interest relating to the property or transaction which is the subject of the transaction," (2) show [that the movant] is "so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest," (3) demonstrate that the "[movant's] interest" is not "adequately represented by existing parties," and (4) make a "timely" application to intervene.
>
> [453 N.J. Super. at 286 (alterations in original) (quoting Am. C. L. Union of N.J., Inc. v. Cnty. of Hudson, 352 N.J. Super. 44, 67 (App. Div. 2002)).]

When a party can satisfy the above test, a court has no discretion to deny intervention. Ibid.

Under Rule 4:33-1 and the Exxon Mobil required analysis, the trial court should have granted the intervenors' motions. It cannot be disputed they had an interest in the subject of the litigation—the court ultimately ordered their businesses to stop their operations.

17

And the intervenors' interests were not protected by the Giloley brothers. Fazzio sued the Giloley brothers, their Delaware and Pennsylvania facilities, and SMH, asserting those entities breached the 2020 settlement agreement. The Giloley brothers had to defend the allegation that they violated the agreement.

The intervenors were not parties to the settlement agreement nor were they involved in any of the prior litigation between Fazzio and the Giloley brothers. NJ Steel and Baypoint assert they are independent companies, with owners and management unaligned with the Giloley brothers. Although NJ Steel[3] may have been aware of the Fazzio/Giloley litigation, the intervenors were not affected until the court ordered them to cease and desist from operating their businesses. Thereafter, they moved to intervene. Under these circumstances, we are satisfied the applications for intervention were timely presented. Therefore, we reverse the orders denying the intervention motions.

Moreover, as a general principle, a court's orders are not binding on non-parties. N. Haledon Fire Co. No. 1 v. Borough of N. Haledon, 425 N.J. Super. 615, 628 (App. Div. 2012). However, this court established an exception to the general principle in Horizon Health Ctr. v. Felicissimo, 317 N.J. Super. 521,

---

[3] There is no evidence that Baypoint had any knowledge or notice of the litigation.

525-26 (App. Div. 1999). We held that non-parties are bound by an injunction pursuant to <u>Rule</u> 4:52-4 where: they are pursuing a "common objective" with the named parties; they "acted in concert or participation with the party" subject to the injunction; and the non-parties had "actual notice of the injunction." <u>Ibid.</u> (emphasis omitted).

The intervenors were never part of the underlying litigation between Fazzio and the Giloley brothers. Therefore, the court could not and did not make any findings regarding the intervenors' actions or participation with the Giloley brothers in establishing their independent businesses. There are no grounds to support the grant of an injunction against a non-party.

For the stated reasons, we reverse the orders denying intervention. We also vacate the orders granting Fazzio's motions to enforce the settlement agreement and for an injunction, and awarding counsel fees. The trial court mistakenly exercised its discretion in making the determination regarding the settlement agreement without discovery and a plenary hearing. The parties submitted multiple conflicting certifications. The injunction was granted against non-parties, without notice of the litigation and no opportunity to be heard.

In addition, in light of our decision to reverse the orders denying intervention, all parties should be permitted the opportunity to undertake discovery in order to present the trial court with a complete picture of the goings-on so it may make the requisite findings of fact and legal conclusions. Without discovery and a plenary hearing, the court could not make the necessary factual findings or credibility determinations that would be owed deference on review. If appropriate, a party may submit an application for counsel fees as provided for under the settlement agreement to the trial court upon a final determination on the enforcement motion.

Reversed in part, vacated in part, and remanded for proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

20