**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1613-24

ASSOCIATION OF CONCERNED
CITIZENS OF NEW BRUNSWICK,

    Plaintiffs-Appellants,

v.

CITY OF NEW BRUNSWICK,
NEW BRUNSWICK HOUSING
AUTHORITY, NEW BRUNSWICK
PLANNING BOARD and NB
PLAZA OWNER URBAN
RENEWAL LLC,

    Defendants-Respondents,

and

ASSOCIATION OF
DISENFRANCHISED BIDDERS OF
REDEVELOPMENT WORK IN THE
CITY OF NEW BRUNSWICK,

    Plaintiff-Appellant,

v.

CITY OF NEW BRUNSWICK,
NEW BRUNSWICK HOUSING

AUTHORITY, NEW BRUNSWICK
PLANNING BOARD and NB PLAZA
OWNER URBAN RENEWAL LLC,

    Defendants-Respondents.

_____

Argued October 15, 2025 – Decided October 29, 2025

Before Judges Chase and Augostini.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket Nos. L-2242-24 and L-2243-24.

Thomas Kamvosoulis argued the cause for appellants (Brach Eichler LLC, attorneys; Thomas Kamvosoulis and Andrew R. Macklin, of counsel and on the briefs; John A. Simeone, on the brief).

Richard J. Byrnes argued the cause for respondent New Brunswick Housing Authority (Wilentz, Goldman & Spitzer, PA, attorneys; Richard J. Byrnes, of counsel and on the brief).

William W. Northgrave argued the cause for respondents City of New Brunswick and the New Brunswick Planning Board (McManimon Scotland & Baumann LLC, attorneys; William W. Northgrave and Joshua H. Raymond, of counsel and on the brief).

Jennifer Borek argued the cause for respondent NB Plaza Owner Urban Renewal LLC (Genova Burns LLC, attorneys; Jennifer Borek, of counsel and on the brief; Charu Mehta, on the brief).

PER CURIAM

Plaintiff Association of Concerned Citizens of New Brunswick ("Citizens Association") appeals from a December 19, 2024 Law Division order dismissing their complaint for lack of standing and a January 31, 2025 order denying their motion for reconsideration. Plaintiff Association of Disenfranchised Bidders of Redevelopment Work in the City of New Brunswick ("Bidders Association,") appeals from a March 7, 2025 order dismissing their complaint for lack of standing and denying their motion to amend the pleadings. We affirm.

I.

In October 2023, the New Brunswick Planning Board held a public meeting to review and discuss the adoption of the Lower George II Redevelopment Plan ("plan"). The plan is focused on the location of the Abundant Life Family Worship Church, Inc. ("Church Property"), a not-for-profit religious organization with approximately 3,000 members and two other lots owned by the city.

In November, the City of New Brunswick Council adopted the plan and designated the New Brunswick Housing and Urban Development Authority ("Housing Authority") as the redevelopment agency charged with implementation. The plan explains:

> This site may have once been developed but has only the site of one main building (currently a church),

A-1613-24

coupled with an empty area utilized semi-informally as parking for the church services. The rest of the plan area includes an undersized, vacant lot, and a standalone mixed-use building. These two additional lots are small and contiguous to the main parcel, and for that reason they have been included in the plan. The existing site of Abundant Life Church is very large and sufficient for purposes of a major redevelopment and so the absorption of the additional parcels will not be required for proposing a project on this site, but it would be logical to include them if a developer for the larger site had interest in acquiring these parcels at their sole expense. The Plan envisions the combined development of the City's downtown as a major impetus to establishment of a sound and expanded economic base for the City of New Brunswick in terms of additional jobs, homes, and an increased tax base.

This is a non-condemnation plan.

The plan outlines how the various municipal agencies will carry out the subject redevelopment. To that end, the plan sets forth detailed requirements, including solicitation and non-solicitation of bids for selecting a redeveloper and the specific materials that a prospective redeveloper must submit to the Housing Authority for consideration with its application.

In December 2023, NB Plaza Owner Urban Renewal, LLC ("NB")[1] submitted its application to the Housing Authority seeking to be designated as the redeveloper. In February 2024, NB submitted an amended application.

On February 28, 2024, the Housing Authority held a hearing regarding NB's application—plaintiffs did not appear or submit written objection. NB presented testimony from two individuals. Thereafter, the Housing Authority unanimously approved NB as the conditional redeveloper which was memorialized by Housing Authority resolution 2024-2/28 #3.

Citizens Association and Bidders Association individually filed complaints in lieu of prerogative writs in April against the City, Planning Board, Housing Authority, and NB (collectively "defendants"). Plaintiffs' complaints sought: (1) vacatur of NB's appointment as redeveloper; (2) to compel the City to solicit bids; (3) to compel the City to properly vet and investigate applications submitted by prospective redevelopers; and (4) counsel fees and cost of suit.

Citizens Association's complaint alleges that it is an unincorporated association formed in the State of New Jersey. It is further alleged that Citizens

---

[1] NB is a joint venture formed between Ifany, LLC—a developer—and the Church. Per NB's ownership disclosure, the following individuals and/or entities have a ten percent (10%) or more stake in NB: Shimon Jacobowitz (Ifany, LLC); George C. Searight, Jr.; and the Church.

Association is "comprised of residents of the City of New Brunswick and other interested parties impacted by the improper enactment of New Brunswick Housing Authority Resolution 2024-2/28 #3." That complaint does not allege how many members belong to Citizens Association, who leads them, details as to meetings (if any) or virtually any other information with respect to that association.

Bidders Association's complaint alleges that it is an unincorporated association formed in the State of New Jersey. It further alleges that Bidders Association is "comprised of residents of the City of New Brunswick and other interested parties who are real estate developers impacted by the improper enactment of New Brunswick Housing Authority Resolution 2024-2/28 #3." That complaint does not allege how many members belong to Bidders Association, who leads that association, whether it holds any meetings or virtually any other information with respect to that purported association.

After all defendants answered, plaintiffs served subpoenas on various individuals named in NB's application to the Housing Authority. The court subsequently quashed those subpoenas. The court further ordered that no additional discovery would be permitted, and it was mandated that the parties enter a consent judgement consolidating the matters.

6

In October, plaintiffs filed their trial brief in the form of a motion to vacate NB's designation as redeveloper. That same month, plaintiffs filed an order to show cause seeking to restrain defendants from taking actions pertaining to the three properties in the plan. The court entered the order to show cause and enjoined defendants from selling or entering land contracts or taking any further actions, conduct, or approvals toward consummating the plan.

In their trial brief, NB opposed the motion to vacate and argued that plaintiffs lacked standing. Plaintiffs' reply included a: (1) certification of counsel which provided unsworn and undated signed statements from ten members of the Citizens Association;[2] (2) certification of "J.R." who purported to be a member of the Citizens Association but needed to remain anonymous due to "fear of reprisals since [they] do business in the [C]ity and [didn't] want [their] involvement to be held against [them]"; and (3) certification of James Byrne ("Byrne"), a purported member of the Bidders Association.

Two days after hearing oral argument in December 2024, the court entered two orders; the first, dismissing the Citizens Association's complaint for lack of standing; and the second, requiring that, regarding the Bidders Association's,

---

[2] It may be gleaned from the record and transcript that some of the statements are signed without an address, while others, are mostly illegible.

A-1613-24

Byrne appear and provide testimony and contemporaneous documentation regarding standing. The court determined: Citizen's Association failed to present any evidence of meetings or elections of officers; Citizen's Association was formed to prevent the Church from "embezzlement;" and the unsworn undated statements were not certified and there was no indication as to who created the forms or obtained the signatures. The court also clarified that testimony from Byrne was required by Bidders Association to demonstrate how he came to this cause before the forty-five days for which an action in lieu of prerogative writ can be filed.

Citizens Association filed a motion for reconsideration of the order dismissing its complaint. The motion for reconsideration was primarily based on a certification of counsel which: (1) provided background regarding counsel's retention by the Citizens Association; (2) affirmed the ten signed documents were compiled before filing the action; (3) clarified that the court's finding that the Citizens Association held no meetings was inaccurate; and (4) offered to provide testimony, or certifications, establishing how the Citizens Association was formed and how the signed documents were obtained.

In January 2025, the Bidders Association moved to amend its complaint to include Byrne. The court held oral arguments pertaining to both plaintiffs'

8

motions on January 31, 2025. Subsequently, the court denied Citizens Association's motion for reconsideration and held in abeyance Bidders Association's motion to amend until the testimony of Byrne on the standing issue could be heard.

In February, the court conducted a plenary hearing, and Byrne was the only witness. Byrne testified how he became a member of Bidders Association and how he became involved in the litigation: he was informed by another contractor about concerns over a no-bid development deal involving the church, and he, along with other similarly concerned contractors, decided to challenge the matter legally. This group, according to Byrne, met in Brooklyn around St. Patrick's Day to discuss filing suit. Byrne testified that he paid legal fees for this action through one of his companies but chose not to be listed as a plaintiff due to a fear of "governmental retaliation."

On March 7, 2025, the court, after oral argument, rendered its decision. The court found that critical elements of Byrne's testimony lacked credibility or support, especially the asserted justification for anonymity and the absence of documentation proving the entity's existence. The court explicitly rejected Byrne's claim that he didn't want to be named as a plaintiff due to fear of retaliation by the City. The court noted that Byrne does no business in the City

9

or even the county, making it implausible that New Brunswick officials could harm his unrelated projects in Bayonne or West New York. The trial court's skepticism was evident: "[t]hat simply does not ring true."

The court also highlighted that it had requested contemporaneous documentation of Byrne's participation in the lawsuit from the beginning but only received a letter of engagement from another person, Vincent Clancy. The court was dismayed that there was no documentation provided to support Byrne's allegation that Clancy was his partner. Moreover, although Byrne testified that he had paid legal fees, the court noted he failed to provide proof of payment. As such, the court inferred that such documents did not exist and determined that there was nothing to connect Byrne to the case when it was filed.

The court dismissed Bidders Association's complaint for lack of standing. It also denied Bidders Association's motion to amend after it determined that Byrne was not a participant in the Bidders Association at the time the complaint was filed. However, the court extended the restraints imposed by plaintiffs' order to show cause for twenty days.

On April 22, 2025, we accelerated the appeal and continued the restraints imposed by the trial court pending our final disposition.

10

On appeal, plaintiffs argue that the court was incorrect in dismissing both complaints for lack of standing; denying Citizens Association's motion to reconsider; and denying Bidders Association's motion to amend the complaint. Plaintiffs also contend the Housing Authority acted arbitrarily and capriciously by not accepting bids and designating NB as redeveloper.

II.

"Standing is . . . a threshold issue. It neither depends on nor determines the merits of a . . . claim." Watkins v. Resorts Int'l Hotel & Casino, 124 N.J. 398, 417 (1991). Where a plaintiff lacks legally sufficient standing—i.e., having a stake in the outcome, adverseness to the subject matter, and a substantial likelihood of harm in the event of an unfavorable decision—courts will not entertain the matter. N.J. Citizen Action v. Riviera Motel Corp., 296 N.J. Super. 402, 409-10 (App. Div. 1997) (citing New Jersey State Chamber of Commerce v. New Jersey Election Law Enforcement Com., 82 N.J. 57, 67 (1980)). Notably, "New Jersey courts . . . [apply] 'liberal rules of standing.'" Courier-Post Newspaper v. County of Camden, 413 N.J. Super. 372, 381 (App. Div. 2010) (quoting Jen Elec., Inc. v. County of Essex, 197 N.J. 627, 645 (2009)). This Court reviews questions regarding standing de novo. NAACP of Camden Cnty. E. v. Foulke Mgmt. Corp, 421 N.J. Super. 404, 444 (App. Div. 2011);

11

People For Open Government v. Roberts, 397 N.J. Super. 502, 508 (App. Div. 2018) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

The importance of representative standing as an efficient procedural vehicle for addressing the common rights and grievances of association members is well-recognized in New Jersey. See Crescent Park Tenants Ass'n v. Realty Equities Corp., 58 N.J. 98, 109 (1971) (overruling N.J. Bankers Ass'n v. Van Riper, 1 N.J. 193 (1948)), as "incompatible with our current procedural philosophies and with our justly liberal holdings in the field of standing[.]" The United States Supreme Court enunciated the criteria required under federal law to establish associational standing when it stated:

> [A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted, nor the relief requested, requires the participation of individual members in the lawsuit.
>
> [Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977).]

Similarly, our own Supreme Court has recognized associational standing where there was no question of individual members' "stake and adverseness[,] . . . there would have been no attack on standing if individual [members] had joined in the

complaint," and the complaint was "confined strictly to matters of common interest and [did] not include any individual grievance which might perhaps be dealt with more appropriately in a proceeding between the individual [member] and the [defendant]." Crescent Pk. Tenants Ass'n, 58 N.J. at 108-09.

Also, New Jersey land use law provides that any interested party has standing to challenge municipal action under a master plan, with "interested party" being defined as follows:

> 'Interested party' means:  (a) in a criminal or quasi-criminal proceeding, any citizen of the State of New Jersey; and (b) in the case of a civil proceeding in any court or in an administrative proceeding before a municipal agency, any person, whether residing within or without the municipality, whose right to use, acquire, or enjoy property is or may be affected by any action taken under P.L.1975, c.291 (C. 40:55D-1 et seq.), or whose rights to use, acquire, or enjoy property under P.L.1975, c.291 (C. 40:55D-1 et seq.), or under any other law of this State or of the United States have been denied, violated or infringed by an action or a failure to act under P.L.1975, c.291 (C. 40:55D-1 et seq.).
>
> [See N.J.S.A. 40:55D-4.]

### A.

Citizens Association, an unincorporated organization, asserts that it met the requirements for associational standing.  It claims that the court incorrectly found that it was a "sham" without conducting any fact finding and based on the

13

irrelevant and incorrect conclusion that the association had not held any meetings after its inception or appointed any officers. We disagree.

N.J.S.A. 2A:64-1 states:

> Any unincorporated organization or association, consisting of 7 or more persons and having a recognized name, may sue or be sued in any court of this state by such name in any civil action affecting its common property, rights, and liabilities, with the same force and effect as regards such common property, rights and liabilities as if the action were prosecuted by or against all the members thereof. Such action shall not abate by reason of the death, resignation, removal, or legal incapacity of any officer of the organization or association or by reason of any change in its membership.
>
> [N.J.S.A. 2A:64-1.]

Citizens Association asserts it filed documents with the court establishing that it had at least seven members at the time the suit was filed, and a recognized name under which they brought their suit. On this basis plaintiff claims it met the threshold for associational standing.

Thus, despite plaintiffs alleging associational standing has merely two elements—seven or more members and a recognized name—the governing statutes clearly imposes a third—to have someone to accept service of process. See generally Buteas v. Raritan Lodge #61 F. & A.M., 248 N.J. Super. 351 (App. Div. 1991) (discussing how an association or organization purporting to exist

14                                                                    A-1613-24

and have standing pursuant to N.J.S.A. 2A:64-1 must also be subject to tort actions from its own members). "[T]he identity of a litigant may bear on such important matters as jurisdiction, issue preclusion, claim preclusion, attorney conflict of interest, enforcement or compliance with court orders, and sanctions." A.A. v. Gramiccioni, 442 N.J. Super. 276, 284 (App. Div. 2015). Further, we have maintained that "[w]ithout the presence of a plaintiff capable of both suing and being sued, relief cannot be afforded." Options v. Lawson, 287 N.J. Super. 209, 221 (App. Div. 1996).

While Citizens Association claims to have "associational" standing, it has, as the court correctly determined, failed to even establish that it is an "association." The court based this determination on the lack of any evidence of meetings, internal leadership, and a lack of a recognizable name. Plaintiffs' complaint, and subsequent papers, provide no: principal place of business;[3] agent of service; manager; president; or person in charge. Plaintiffs seek to create a legal impossibility; wherein they can sue under associational standing

---

[3] Notably, this runs afoul of Rule 1:4-1 which requires "the first pleading of any party shall state the party's residence address, or, if not a natural person, the address of its principal place of business." This rule "is not merely one of administrative convenience. It also serves society's interest in having access to the facts of the lawsuit." A.B.C. v. XYZ Corp., 282 N.J. Super. 494, 500 (App. Div. 1995).

A-1613-24

but can nevertheless not be sued. Moreover, Citizens Association was formed to combat embezzlement in the Church, not designation of a redeveloper. See North Haledon Fire Co. No. 1 v. Borough of North Haledon, 425 N.J. Super. 615, 627-28 (App. Div. 2012). Thus, the court was correct in holding that Citizens Association did not have standing because the "undated, uncertified signed statements obtained by [] unknown individual[s] cannot be regarded as competent admissible evidence of membership in the Association of Concerned Citizens of New Brunswick."

B.

Citizens Association also contends that court erred in not granting its motion for reconsideration. We are not persuaded.

We will not disturb a trial court's denial of a motion for reconsideration under Rule 4:49-2 absent a clear abuse of discretion. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021); Kornbleuth v. Westover, 241 N.J. 289, 301 (2020); Hoover v. Wetzler, 472 N.J. Super. 230, 235 (App. Div. 2022). "[An] abuse of discretion only arises on demonstration of 'manifest error or injustice[,]'" Hisenaj v. Kuehner, 194 N.J. 6, 20 (2008) (quoting State v. Torres, 183 N.J. 554, 572 (2005)), and occurs when the trial judge's "decision is 'made without a rational explanation, inexplicably departed from established policies,

16

or rested on an impermissible basis,'" Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012) (quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)).

Motions for reconsideration are governed by Rule 4:49-2, which provides that the decision rests within the sound discretion of the trial court. Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015). Reconsideration is only appropriate when "'the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis," or "it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence.'" Capital Fin. Co. of Del. Valley, Inc. v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).

A litigant should not seek reconsideration merely because of dissatisfaction with a decision of the court. Ibid. The purpose of a motion for reconsideration is not to re-argue the motion that has already been heard "for the purpose of taking the proverbial second bite of the apple." State v. Fitzsimmons, 286 N.J. Super. 141, 147 (App. Div. 1995). The basis for the motion for reconsideration focuses on what was before the court in the first instance. Lahue v. Pio Costa, 263 N.J. Super. 575, 598 (App. Div. 1993). It "does not provide

17

the litigant with an opportunity to raise new legal issues that were not presented to the court in the underlying motion." Medina v. Pitta, 442 N.J. Super. 1, 18 (App. Div. 2015).

For the reconsideration motion, plaintiff's counsel submitted a certification outlining the background of their firm's retention by the Citizens Association in April 2024, shortly after which he "received from Citizens Association the signed statements of ten members of the association." The certification also explained that members met by telephone and in person and "[t]hose members decided to proceed in the name of an association so that they would not be required to proceed in their own names, and so they could share in the cost of litigation, all of which is permissible pursuant to applicable law." The certification also noted that Citizens Association was prepared to bring forward testimony or certifications establishing the founding of Citizens Association and describing how the signed statements were circulated and gathered.

These facts could have been presented to the court during the original motion. More critically, the reconsideration motion did not offer any new facts to demonstrate Citizens Association had standing, instead promising that it could offer such facts in the future because counsel was "prepared to bring

forward testimony, or at the very least certifications." The court's initial decision rested on a sound determination that Citizens Association could not be sued as it had no principal place of business; agent of service; manager; president; or person in charge. Although the motion for reconsideration was not a proper vehicle to provide these documents, it still failed to produce them. We discern no abuse of discretion in the court's denial.

C.

We next consider Bidders Association's overlapping challenges to the court's dismissal of its complaint for lack of standing and denial of its motion to amend the complaint. Bidders Association contends they met the unincorporated association standard outlined in N.J.S.A. 2A:64-1. They further argue that the judge's error was magnified by the decision to deny their amendment motion. We disagree.

Bidders Association did not identify in its complaint an address or principal place of business in contravention of Rule 1:4-1. Byrne did not provide one in his testimony. Byrne also failed to prove or document that Bidders Association had a recognizable name; agent of service; manager; president; or person in charge. Bidders Association has set forth no means for effectuating service upon it. Like Citizens Association, they could not be sued. This fails to

19

satisfy N.J.S.A. 2A:64-1 and 64-2. Hence, the court was correct in determining they did not have standing.

Also weighing against a finding of associational standing in this case is the clear indication that the lawsuits have been driven by an individual rather than a common grievance, and that private interests predominate over any claimed public interest.[4] Given these personal grievances underlying the complaints, Bidders Association failed to show, as they must to establish associational standing, that the complaints do "not include any individual grievance which might perhaps be dealt with more appropriately in a proceeding between the individual member and the defendant." N.J. Citizen Action, 296 N.J. Super. at 416 (quotation and citation omitted).

Bidders Association also asserts the court erred in not allowing an amendment of the complaint to add Byrne as a plaintiff. They argue the amendment would not have been futile and the trial court improperly applied a heightened standard.

Rule 4:69-6(a) generally provides that actions in lieu of prerogative writs must be filed within forty-five days after the accrual of the right to the review,

---

[4] As the court concluded from the record before it, "it's obvious . . . that one of the motivations of this litigation is to settle a score with Mr. Jacobowitz."

hearing, or relief claimed. However, Rule 4:69-6(c) permits an enlargement of the forty-five-day period "where it is manifest that the interest of justice so requires." Our Supreme Court has identified three categories that qualify under this exception: "'(1) important and novel constitutional questions; (2) informal or ex parte determinations of legal questions by administrative officials; and (3) important public rather than private interests which require adjudication or clarification.'" Borough of Princeton v. Bd. of Chosen Freeholders of Mercer Cnty., 169 N.J. 135, 152 (1975) (quoting Brunetti v. Borough of New Milford, 68 N.J. 576, 586 (1975)). None of those exist here.

Pursuant to Rule 4:9-1, "[a] party may amend any pleading as a matter of course at any time before a responsive pleading is served." Any time after the responsive pleadings are filed, "a party may amend a pleading only by written consent of the adverse party or by leave of court." R. 4:9-1. The Rule directs that the court's permission to amend "be freely given in the interest of justice." Ibid. If the amended complaint arises "out of the conduct, transaction or occurrence set forth . . . in the original pleading, the amendment relates back to the date of the original pleading." R. 4:9-3. In such cases, the statute of limitations will not bar the amended claim.

The decision to either allow or deny amended claims is fact-sensitive and subject to the trial court's sound discretion. See Notte v. Merchs. Mut. Ins. Co., 185 N.J. 490, 501 (2006). "That exercise of discretion requires a two-step process: whether the non-moving party will be prejudiced, and whether granting the amendment would nonetheless be futile." Ibid. Appellate review determines whether the court's exercise of discretion was clearly abused. See Franklin Med. Assocs. v. Newark Pub. Sch., 362 N.J. Super. 494, 506 (App. Div. 2003).

Because this was an action in lieu of prerogative writs, the court determined that pursuant to Rule 4:69-6, any proposed additional plaintiff must necessarily have been part of the process within the forty-five-day limitation period for bringing an action. The trial court noted that it had requested Bidders Association provide contemporaneous documentation, with respect to Byrne's involvement in the association, and observed that the only document provided failed to address that issue. The trial court determined that Byrne's testimony was unreliable to show he was a participant in the Bidders Association at the time the complaint was filed. Therefore, the court determined that the complaint "was an attempt by the parties to prosecute their claim anonymously, which is not permitted under the ABC v. XYZ Corp. case." We conclude the court did not abuse its discretion in its determination.

The court's denial of plaintiffs' motion to amend the Bidders Association complaint to add Byrne as a named plaintiff was also properly denied because the amendment would be futile. Under the "futility" exception to the liberal rules of amendment, the discretion to deny a motion to amend "is not mistakenly exercised when it is clear that the amendment is so meritless that a motion to dismiss under R[ule] 4:6-2 would have to be granted." Pressler & Verniero, Current N.J. Court Rules, cmt. 2.2.1 on R. 4:9-1 (2025). Thus, when considering "the factual situation existing at the time each motion is made," a court is "free to refuse leave to amend when the newly asserted claim is not sustainable as a matter of law." Notte, 185 N.J. at 501.

Because the plan is a non-condemnation plan, the housing authority has no power to condemn the Property and convey it to a redeveloper; which means that a prospective redeveloper with no interest in the Church Property is precluded from redeveloping it unless, like NB Plaza, it obtains some control over the site in order to apply for the redeveloper designation. Plaintiffs failed to demonstrate that Byrne could gain control of the Property and develop the project.

Because we conclude that the court correctly dismissed the complaints for lack of standing and did not abuse its discretion by not permitting an amendment, we need not address plaintiff's remaining arguments.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division